## SAN ANTONIO & ARANSAS PASS RAILWAY COMPANY
### v. BERTHA ENGELHORN ET AL.

#### Decided October 17, 1900.

**1. Evidence—Contributory Negligence and Ordinary Care.**

In an action against a railway company for negligence causing the death of a train conductor killed by being brought in contact with a cattle-guard, at a time when he had descended a ladder on the side of a car to pour water into a hot box, it was competent, on the issue of contributory negligence and ordinary care, for a witness to testify that in like circumstances conductors and brakemen frequently go down ladders of cars to look after the running apparatus while the train is in rapid motion.

**2. Same—Discrediting Testimony—Cross-Examination.**

Defendant company's witness having testified to the dangerous nature of the act in going down the side of the car, as deceased had done, it was competent, as discrediting his testimony, for plaintiff to ask the witness on cross-examination if he himself had gone down ladders under the same conditions, the witness having also testified that he considered himself a prudent man.

**3. Same—American Mortality Tables.**

In an action against a railway company for the death of an employe, it is not error to admit in evidence the "American Tables of Mortality" for the purpose of showing what would have been the probable duration of the life of deceased. Following Railway v. Johnson, 24 Texas Civil Appeals, —.

**4. Assumed Risk—Master and Servant—Charge of Court.**

A charge that if the deceased knew, or had reasonable ground to believe, that the cattle-guards along the line of the railroad were constructed so near the track as to render it possible for him, in going down the car to pour water on a hot box, to be struck thereby, he assumed the risk of such danger, was properly refused, as a knowledge of conditions involving the mere possibility of a danger

is not such a state of facts as necessarily charges a person with knowledge of the danger. The court properly gave the charge with the word "probable" substituted for "possible."

**5. Damages—Verdict Held Excessive.**

In an action against a railway company for negligence causing the death of a train conductor, the jury returned a verdict in favor of the wife and children of the deceased, and also for $500 for his mother. The evidence showed that she was 52 years old and had other means of support, and that the deceased sent her only about $10 a year. Held, that the verdict was, as to her, excessive to the amount of $300.

APPEAL from Bexar. Tried below before Hon. S. J. BROOKS.

*Denman, Franklin, Cobbs & McGown,* for appellant.

*Price, Green & Green* and *Lewy & Sehorn,* for appellees.

JAMES, CHIEF JUSTICE.—The wife, daughter, and mother of L. E. Engelhorn, a conductor of appellant's train, recovered judgment against appellant for damages alleged to have been sustained by them by reason of his death, alleged to have been caused by a hand-hold giving away, or contact with a cattle-guard, while he was in the act of pouring water into a hot box, he having descended a ladder on the side of the car for that purpose. The forms of negligence alleged were that the cattle-guard was too close to the track to admit of the performance of his said duty safely, also the unsafeness of the hand-hold.

We conclude as facts that the evidence showed negligence on the part of defendant causing the death of Engelhorn, in one or both of the matters, and that there was no contributory negligence on his part nor knowledge of the danger whereby he could be held to have assumed the risk thereof. The amount of the verdict will be considered in another place.

In regard to the first and second assignments, touching certain testimony of the witness Hamner, we think that testimony to the effect that in like circumstances conductors and brakemen frequently go down ladders of cars to look after the running apparatus while the train was in rapid motion, upon the issue of contributory negligence, was proper. Such testimony tended to show that it was the common or customary course pursued in performing such duties, and was pertinent to the question of ordinary care. Railway v. Cowser, 57 Texas, 303; Flanders v. Railway, 53 N. W. Rep., 544. Hamner also testified on cross-examination that he had gone down on the side of cars running at the same rate of speed that this train was running. This was also objected to. He was defendant's witness, and testified to the dangerous nature of the act. In view of this testimony plaintiff was entitled to discredit it, or qualify its effect by showing that he himself had gone down ladders under the same conditions, he also testifying in the same connection that he considered himself a prudent man.

Under the third assignment the admissibility of the American Tables of Mortality to show the probable length of Engelhorn's life, had he not

been killed, is questioned, in connection with the following testimony of the witness McMillan: "That such table is the mortality statement of all the standard insurance companies of the United States; that it is made up from the experience from such companies of death of the persons that they have actually insured, and that that is the only data from which such tables are compiled; that the table represents the experience of such companies for the past one hundred years upon the people they have insured, and not the average man; that they do not insure everybody; that they are pretty careful about whom they insure; that these tables do not undertake to estimate how long the average man would live, but only estimate the average life of the class of people whom they insure; that it represents the average duration of life of the people they have insured, but not the average of the human race; that a man who follows the business of a railroad conductor or brakeman would not be insured by such companies. They could only get what is known as 'industrial insurance.' That when conductors or brakemen get any kind of insurance, they are required to pay a considerably higher premium than other people who are insured, from the fact that the risk is greater. That the witness did not know of any table that undertakes to give the average life of a conductor or brakeman; that the fact that said companies would not insure them is based upon the fact that their supposed mortality is much greater than the average man." This is taken from the bill of exceptions, which contains much that is not in the statement of facts as the testimony of McMillan. We are of opinion that the tables were admissible, and for reasons refer to our opinion in the case of Railway v. Johnson, ante, p. 180.

The court in one paragraph of the charge stated: "One who enters the service of a railroad company assumes the risks ordinarily incident to the work, but he does not assume any risk arising by reason of the company's negligence, unless he knows it." The fourth assignment complains of this. This is substantially the rule announced in Railway v. Hannig, 91 Texas, 347, in this language: "He (the servant) does not assume the risks arising from the failure of the master to do his duty, unless he knows of the failure and the attendant risks, or in the ordinary discharge of his duty must necessarily have acquired that knowledge." Knowledge, therefore, of the master's negligence and of the danger arising therefrom, is the foundation of assumed risk, and the paragraph stated the rule generally, but not incorrectly.

Defendant asked the following charge: "If you believe from the evidence that the deceased, L. E. Engelhorn, knew, or had reasonable ground to believe, that the cattle-guards along defendant's line of railway upon which he was working were constructed so near to the track as to render it possible for him, in going down the car to pour water upon the hot box, to be struck thereby, then under the law he assumed the risk of such danger, and you will find for the defendant." This was refused, and thereafter the court gave a charge, also asked by defendant, in terms the same, except that it used the word "probable" instead of "possible." The refusal to give the charge as above copied is the

subject of the fifth assignment. Knowledge of conditions involving the mere possibility of a danger is not such a state of facts as necessarily charges a person with knowledge of the danger. We think the charge indicated above as given was as favorable a statement of the rule as defendant could have expected.

Examination of the charge complained of by the sixth and seventh assignments of error convinces us that they are not fairly subject to the construction and effect sought to be given them. We also conclude that there was testimony which required the refusal of the requested charge mentioned in the eighth assignment. The eleventh and twelfth assignments, going to the sufficiency of the testimony to support the verdict, are not well founded. The rule concerning the measure of damages, embodied in the refused charges referred to in the thirteenth, fourteenth, and fifteenth assignments, was incorrect.

The verdict was for $7500 in favor of the widow, $5000 in favor of the child, and $500 in favor of the mother of deceased. As to assignments complaining of excess in the amount of the verdict, we conclude that they are not well taken, except that which refers to the sum of $500 awarded the mother. The testimony bearing on this matter is that of Engelhorn's widow as follows: "I am the wife of L. E. Engelhorn. His mother is living; her name is V. P. Engelhorn. She lives at New Orleans. * * * Occasionally he would send his mother a few dollars. * * * I suppose he sent his mother every two or three months four or five dollars, just as we had it. Since Christmas we did not send any. The whole would not amount to over $10 a year. His mother had other means of support." There was no proof of the mother's age, and she was not before the jury as a witness. Therefore they had no means of estimating the probable duration of her life. We can not approve the verdict for $500 in her behalf. She was, however, living at the date of the trial, about seven months after the accident. We conclude that this item should be reduced to the sum of $5, and five days will be allowed for filing a remittitur accordingly. If this be done the judgment will be reformed and affirmed accordingly.

*Reformed and affirmed.*

### ON APPELLEE'S MOTION FOR REHEARING.

In reference to the recovery of $500 on behalf of the mother of deceased, we relied on the evidence as it was stated in appellant's brief and acceded to by appellee. Our attention is called by this motion to the fact that there was testimony that the mother's age was about 52 years. In view of this the remittitur required will be fixed at $300, leaving the judgment in this respect $200.

*Ordered accordingly.*

Writ of error refused.