GULF, C. & S. F. RY. CO. v. BROOKS et al.
(Court of Civil Appeals of Texas. Nov. 2, 1910. On Motion for Rehearing, Dec. 7, 1910.)

1. CONTINUANCE (§ 7*)—STATUTORY RIGHT—FIRST APPLICATION—EFFECT.

A party's first motion for continuance, though in full compliance with the statute, does not entitle the moving party to a continuance as of right, the only effect being that the full compliance with the statute destroys the presumption, which otherwise an appellate court will entertain, that the trial court had not abused its discretion.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. § 18; Dec. Dig. § 7.*]

2. CONTINUANCE (§ 46*)—APPLICATION—SUFFICIENCY—ABSENCE OF WITNESSES.

An application for a first continuance on the ground of the absence of witnesses is insufficient where it fails to show why the witnesses are absent, or that the reason is unknown, and further shows that such witnesses were employés of the applicant, that the case had previously been set for trial for the day on which it was called, but not that the witnesses had been notified of that fact, so that a denial on such a showing is no abuse of discretion.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. § 133; Dec. Dig. § 46.*]

3. APPEAL AND ERROR (§ 1043*)—HARMLESS ERROR—DENIAL OF CONTINUANCE.

Any error in denying defendant a continuance for the absence of witnesses who were employés of the defendant was harmless, where two of such witnesses were present and testified for plaintiff, and the others were residents of the county, the trial having lasted three days, and it also appearing that their testimony would have been merely cumulative, and in relation to matters as to which there was no serious contest.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4121; Dec. Dig. § 1043.*]

4. APPEAL AND ERROR (§ 1051*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

Admission of opinion evidence by one not an expert to the distance in which a train could be stopped held harmless error, where the same evidence was introduced by the other side.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4166; Dec. Dig. § 1051.*]

5. MASTER AND SERVANT (§ 270*)—RELEVANCY—ADMISSIBILITY—DEPENDENCE ON OTHER MATTERS.

In an action against a railway company for the death of a section boss, who was killed going to work on his hand car, the place of the accident being on a curve, there was evidence that it was impossible to see around the curve. Held that, because of the fact, it was proper to admit rule No. 479 of the defendant, which required engineers to sound the whistle in rounding curves where the view is obscured.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 270.*]

6. MASTER AND SERVANT (§ 141*)—MASTER'S LIABILITY FOR INJURIES TO SERVANT — MODES OF WORK.

It is the duty of a railroad to make and enforce proper rules for the safety of its employés.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 283; Dec. Dig. § 141.*]

7. EVIDENCE (§ 514*) — OPINIONS—EXPERTS—SPECULATIVE EVIDENCE.

In an action for the death of a sectionman killed on a curve in a cut by a passenger train while trying to get a hand car off the track, evidence given by an experienced engineer as to the dangers to a rapidly moving train in collision with a hand car under such circumstances is not open to objection as speculative, except as all expert evidence is speculative.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2323; Dec. Dig. § 514.*]

8. TRIAL (§ 252*) — INSTRUCTIONS — APPLICABILITY TO EVIDENCE.

In an action against a railway company for wrongful death, which occurred through defendant's running over plaintiff's intestate, an eyewitness testified that the train did not seem to slow up, etc., and other evidence was admitted that the hand car could be seen 1,400 feet away, while the engineer testified that he put on the emergency brake, but no evidence that passengers were jarred was offered. Held, that an instruction that there was no evidence that the engineer failed to adopt all reasonable means at his command to avoid injury was not applicable to the evidence, and properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 602, 603; Dec. Dig. § 252.*]

9. APPEAL AND ERROR (§ 1067*) — REVIEW — HARMLESS ERROR—INSTRUCTION REFUSED.

In an action for wrongful death of plaintiff's intestate, which occurred while he was attempting to remove a hand car from the tracks in front of an approaching train, defendant was refused an instruction to the effect that it was his duty to exercise a high degree of care to remove such hand car. This instruction was refused. Held, harmless error because it conflicted with defendant's theory that there was no danger to the train from a collision with a hand car, so that deceased should have sought a place of safety and not have tried to move it from the track, and because an instruction similar to it was given in behalf of plaintiff.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4229; Dec. Dig. § 1067.*]

10. TRIAL (§ 260*)—INSTRUCTIONS—REFUSAL—ERROR CURED BY OTHER INSTRUCTIONS.

It is not error to refuse an instruction eliminating a certain issue where other parts of the court's charge have eliminated such issue.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651, 652; Dec. Dig. § 260.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

11. TRIAL (§ 253*)—INSTRUCTIONS—APPLICABILITY TO EVIDENCE—EXCLUDING DEFENSES.

In an action against a railway company for the wrongful death of plaintiff's intestate, run down by a train, it was sought to charge him with contributory negligence in removing a hand car from in front of an approaching train. The plaintiff sought to rebut the theory of contributory negligence by claiming that it was the deceased's duty to attempt to remove this hand car to save the lives of persons on the train. Held, that an instruction which ignored this contention was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613, 616; Dec. Dig. § 253.*]

12. TRIAL (§ 191*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

In such a case an instruction which assumed that the deceased in attempting to remove the hand car was negligent was properly refused, because it was upon the weight of the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 420.; Dec. Dig. § 191.*]

13. MASTER AND SERVANT (§ 137*)—INJURIES TO SERVANT—OPERATION OF RAILROAD—PERSONS ON TRACK—TRAIN BEHIND SCHEDULE—DUTY.

Where a train is behind its schedule and will not naturally be expected, the engineer owes other servants of the company a duty to exercise ordinary care to discover them if on the track.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 267, 269, 274; Dec. Dig. § 137.*]

14. NEGLIGENCE (§ 74*)—CONTRIBUTORY NEGLIGENCE — ACTS IN EMERGENCY — SAVING LIFE.

It is not contributory negligence for a party to expose himself to risk in endeavoring to save the lives of others, provided his conduct is not rash or reckless.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 102; Dec. Dig. § 74.*]

#### On Motion for Rehearing.

15. NEGLIGENCE (§ 74*)—CONTRIBUTORY NEGLIGENCE—ACTS IN EMERGENCY—EMERGENCY CAUSED BY PARTY INJURED—SAVING LIFE.

Where a party's own negligence causes such a condition that the negligence of others is about to injure innocent third parties, that person is not guilty of contributory negligence if he run risks to save the lives of the imperiled third parties.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 102; Dec. Dig. § 74.*]

Appeal from District Court, Milam County; J. C. Scott, Judge.

Action by Mrs. F. J. Brooks and others against the Gulf, Colorado & Santa Fé Railway Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

Terry, Cavin & Mills, for appellant. U. S. Hearrell and M. J. Moore, for appellees.

JENKINS, J. Mrs. F. J. Brooks, widow of F. J. Brooks, deceased, and their two minor children, brought suit in the district court of Milam county to recover damages on account of the death of said F. J. Brooks, alleged to have been occasioned by the negligence of the defendant company, the appellant herein.

The undisputed facts show that F. J. Brooks was a section foreman on the Gulf, Colorado & Santa Fé Railroad, living at Cameron; that on the evening previous to his death he received orders from the roadmaster to report next morning with his crew at Milano; that he left Cameron about 6:20 a. m., and that just before starting he went to the depot and looked in at the window, presumably to see if there were any further orders for him, but that the operator was not in the office; that Brooks was proceeding with his crew towards Milano, going downgrade at a rather rapid rate of speed for a hand car, when one of his crew discovered a passenger train coming; that the passenger train when discovered was in a cut, and was running at the rate of 45 or 50 miles an hour; that the whistle upon said train had not been blown before entering the cut; that the passenger train was behind time; that, upon said train being discovered, said hand car was stopped as quickly as possible, and that Brooks and his crew of six men jumped off of same and attempted to remove it from the track, and succeeded in getting two of the wheels off of the track, and two of the wheels between the rails, at which time, the engine being close upon them, all of them except Brooks ran and were not injured; that Brooks did not leave the hand car until it was too late for him to get out of the way, and that he was struck and killed by the engine; that, when Brooks got off of the hand car, he was in a place of safety, and that he voluntarily went to a place of danger, to wit, the center of the track, where he caught hold of the hand car, and was endeavoring to lift the same off the track, up to a moment before he was struck by the engine.

The evidence was sufficient to raise the following issues of fact: (1) Was Brooks negligent in not sooner discovering the approaching passenger train? (2) Was the negligence of Brooks, if any, the proximate cause of his injury? (3) Did Brooks, after reaching a place of safety, return to a place of danger for the purpose of trying to prevent the train from being wrecked? (4) If so, was he guilty of negligence in so doing? (5) Was his conduct in this regard rash and reckless? (6) Was the engineer on the passenger train guilty of negligence in not sooner discovering the position and peril of Brooks? (7) Did said engineer make proper efforts to stop the train, after discovering Brooks' peril? (8) Was the negligence, if any, of appellant's servants who were operating the passenger train, the proximate cause of the death of Brooks? All of these issues were submitted to the jury, and by them determined against appellant, and unless the court erred in its manner of submitting these issues or some of them, or failed to submit some other material issue, or erred in refusing to grant a con-

tinuance, or in the admission or rejection of material evidence, the judgment should be affirmed.

1. Appellant assigns error on the refusal of the court to grant its motion for a continuance; the same being its first application for a continuance. The contention of appellant upon this assignment is (a) said motion was in full compliance with the statute; and (b), such being the case, it was entitled to a continuance as a matter of right, and the court had no discretion in the matter. There are a number of cases in this state in which the language may be found that, when everything required by the statute is stated in a first application for a continuance, the court has no discretion in the matter, and the party making such application is entitled to a continuance as a matter of right. Doll v. Mundine, 84 Tex. 318, 19 S. W. 394; Cleveland v. Cole, 65 Tex. 403; Chilson v. Reeves, 29 Tex. 275; Prewitt v. Everett, 10 Tex. 283. All of these cases are based to some extent on Hipp v. Bissell, 3 Tex. 18. A careful examination of that case will show that what the court had in mind was not as to whether the court had any discretion; but as to whether it was a legal discretion subject to revision and to be determined by the rules as prescribed by the statute, rather than by the idea of justice or expediency that might exist in the mind of the court. Our construction of the meaning of this statute is this: When a party has stated in his application for a continuance everything which the statute prescribes, he has made out a prima facie case for a continuance, and upon appeal no weight will be given to the presumption, which ordinarily obtains, that the court has not abused its discretion in overruling such motion. The fact that the application complies with the rules prescribed by the statute in this regard, in the absence of conclusive proof to the contrary, will be taken as sufficient evidence that the court has abused its discretion; whereas, if the statute has not been complied with, it will be presumed, in the absence of a showing to the contrary, that the court has not abused its discretion. By way of illustration: One of the grounds for a first continuance is the absence of a material witness. Suppose the statute in this regard is fully complied with in a motion for a continuance, but the court nevertheless overrules the motion, to which a bill of exceptions is properly reserved. Immediately thereafter the witness appears and testifies in the case; is it not puerile to say that an appellate court must reverse the case on account of the refusal of the trial court to grant the motion for a continuance? And yet does not this necessarily follow, if the trial court had no discretion in the matter, and such motion entitled the maker thereof to a continuance as a matter of right? But, however this may be, we do not think the application in this case entitled the appellant to a continuance, because, first, it was not a literal compliance with the statute, in that it did not state the cause of the absence of the witnesses, and did not state that such cause was unknown; second, it did not show sufficient diligence, in that the absent witnesses were in the employ of the appellant. The case had been previously set down for trial on the day on which it was called, and it was not shown that the witnesses had been notified of that fact. Two of the witnesses on account of whose absence the continuance was asked appeared and testified in behalf of the appellees. The trial of this case lasted three days. The other witnesses mentioned in the motion for a continuance resided in the county and were in the employ of appellant, and it is not shown in the motion for new trial why they did not appear and testify. Their testimony, as set out in the motion, would have been cumulative, and not on matters as to which there was any serious contest. For all of which reasons we hold that the court did not abuse its discretion in overruling appellant's motion for a continuance.

2. The error complained of in admitting the evidence of the witness Reed to the effect that he thought that a passenger train, under the circumstances of this case, could be stopped in about 1,000 feet, is harmless, inasmuch as appellant's witness, the engineer who had charge of the passenger train, testified to the same effect, and there was no evidence to the contrary. The objection to Reed's testimony was that he was not shown to be an expert in this matter. Dailey v. Starr, 26 Tex. 566; Patton v. Gregory, 21 Tex. 520; Hunter v. Hubbard, 26 Tex. 544; Tuggle v. Hughes, 28 S. W. 63.

There was no error in admitting in evidence appellant's rule No. 479, requiring engineers to sound the whistle in rounding all curves where the view is obscured; the objection to the same being that there was no evidence that the curve was obscure. There was such evidence. Turner testified: "You could not see around the curve on a hand car. It is an obscure curve—one you cannot see around." Reed testified to the same effect. It was the duty of appellant to make and enforce proper rules for the safety of its employés. Schroeder v. Railway Co., 108 Mo. 322, 18 S. W. 1095, 18 L. R. A. 827. Appellant objected to the testimony of Smith as to the dangers to be encountered in coming in contact with a hand car under the circumstances as shown in this case; the objection to said testimony being that it was "speculative and immaterial." It certainly was not immaterial, in view of the contention that the deceased, at the time he was struck by the engine, was trying to prevent such collision, in order to save the lives of persons on the passenger train. It was not speculative, except in the sense that all expert testimony may be said to be

speculative. Smith was shown to be an experienced engineer. and qualified to testify as an expert in this matter.

3. Appellant assigns a number of errors on the refusal of the court to give special charges as requested, all of which are overruled for the following reasons:

(a) Fifth assignment. Appellant asked the court to charge the jury as follows: "There is no evidence that the engineer of the passenger train failed to adopt all the means at his command, consistent with the safety of train, to stop the train after the peril was discovered, and on this issue you cannot find for the plaintiffs." There was some evidence of such failure. Johnson, one of the hand car crew, testified that it seemed to him that the train did not slow up at all, and the way the dinner buckets were knocked into the adjoining pasture would seem to corroborate his view of the matter. The engineer in charge of the passenger train testified that, upon discovering the hand car and its crew, he applied the emergency brakes. It was shown that this would have thrown at least some of the passengers off of their seats. It is not shown that any passenger felt the shock of a sudden stop. The engineer testified that he could have stopped the train in from 700 to 1,200 feet. It was shown that he could have seen the hand car at a distance of 1,440 feet. It is true he testified that he did not see the hand car until he was within 5 car lengths of it, about 300 feet, but the jury were not bound to accept his testimony, though no witness swore to the contrary. Becker v. Railway Co., 110 Ky. 474, 61 S. W. 997, 53 L. R. A. 267, 96 Am. St. Rep. 459; Schroeder v. Railway Co., 108 Mo. 322, 18 S. W. 1095, 18 L. R. A. 827; Brown v. Griffin, 71 Tex. 659, 9 S. W. 546; M. & B. Co. v. Landa, 40 S. W. 406; Insurance Co. v. Villeneuve, 29 Tex. Civ. App. 128, 68 S. W. 206; Coats v. Elliott, 23 Tex. 613; Stitzle v. Evans, 74 Tex. 600, 12 S. W. 327; Gonzales v. Adoue, 56 S. W. 548.

(b) In the seventh assignment appellant complains of the refusal of the court to instruct the jury that "it was the duty of the deceased to exercise a very high degree of care to remove the hand car from the track and prevent the collision." We do not see how appellant can complain of the refusal to give this charge, as it would have been stronger in favor of appellees than any given on this issue; nor how it can reconcile this request with its contention in its tenth assignment of error that there was no danger in such collision, and that it was the duty of Brooks to seek a place of safety and not attempt to remove said hand car, and that Brooks did not attempt to remove the hand car to prevent the train being wrecked, as contended under its fourteenth and sixteenth assignments of error.

(c) The eighth assignment is overruled, for the reason that the issue therein sought to be eliminated was in fact eliminated by the failure of the court to submit the same to the jury in its main charge.

(d) The charge, refusal to give which is complained of in the ninth assignment of error, was properly refused because it requires the jury to ignore the right of the deceased to expose himself to danger to save the lives of others.

(e) The court rightly refused the requested charge as shown by the tenth assignment, because the same was on the weight of the evidence, in that it assumed that, if the deceased placed himself in a position of danger in attempting to remove the hand car, such act was negligence. The eleventh and thirteenth assignments of error are overruled for the same reason.

(f) We hold that the requested charge, refusal of which is complained of under the twelfth assignment of error, was properly refused, for the reason that it assumes that the operatives of the passenger train owed the deceased no duty until they actually discovered his peril. In view of the fact that a train running behind time is liable to meet a hand car at any time, and in view of the fact that the engineer had failed to sound the whistle before entering the cut, as required to do by the rules of appellant, we think he did owe the deceased the duty to exercise ordinary care to discover him on the track.

4. The principal legal question involved in this case is as to whether the deceased in attempting to remove the hand car in order to prevent the passenger train from being wrecked was bound to exercise that degree of care for his own safety that would be exercised by an ordinarily prudent man in the ordinary affairs of life. This question was so fully considered, and the law in such case was so clearly stated in the able opinion by the late Chief Justice of this court in case of Railway Co. v. McVey, 81 S. W. 998, that we deem it unnecessary to do more than to refer to that case for our views on this subject. The cases cited by Judge Fisher in that case, as well as many others that we have examined, fully sustain the text of that decision. Upon the authority of that case and the numerous decisions sustaining the same, we hold that where a party has not, by his own negligence, produced the situation which endangers the lives of others, he is justifiable in exposing himself to danger which must be apparent to him as a reasonable man, in order to save the lives of such others; and that in so doing, if his conduct is not rash or reckless, he will not be guilty of contributory negligence. We find that the evidence in this case raised these issues, and that they were correctly submitted to the jury in the general and special charges, and, the jury having found in favor of appellees

on these issues of fact, their verdict will not be disturbed by us.

Finding no error in the record, this case is affirmed.

Affirmed.

### On Motion for Rehearing.

As one of the grounds upon which appellant predicates its motion for a rehearing herein, it asserts the following proposition: "If the injured party by his negligence produces the situation that endangers the life of another, his exposure to peril in attempting to save that life would not be excused or justified." Upon this issue the appellant requested the following special charge: "Under the evidence in this case, it was the duty of the deceased as a section foreman to keep a lookout for approaching trains, and he had no right to assume, under the facts in evidence, that a train would not be approaching at any particular time. Now, if you believe and find from the evidence that deceased did not keep a proper lookout for approaching trains, and that under the circumstances of this case his failure so to do was negligence, and his acts in the premises produced the occasion of his subsequent death, then you are directed that plaintiffs cannot recover, although you may further find and believe from the evidence that the engineer in charge of the approaching train did not exercise the care required of him under the circumstances."

Appellant's ninth assignment of error was as to the refusal of the court to give this charge. Upon this we said in the opinion heretofore rendered in this case: "The charge, refusal to give which is complained of in the ninth assignment of error, was properly refused because it requires the jury to ignore the right of the deceased to expose himself to danger to save the lives of others." If Brooks failed to keep a proper lookout, and such failure proximately contributed to his injury, the appellees were not entitled to recover, and the court at the request of appellant so instructed the jury in the following language: "If you find that the deceased could have discovered the approaching train sooner than he did, and that his failure in this behalf was negligence, proximately contributing to the result, then plaintiff cannot recover, although you may further find that he lost his life in an effort to remove the car to prevent the accident to the passenger train." The jury by their verdict said that the negligence of appellant was the sole proximate cause of the death of Brooks, and, if this be true, the negligence of appellant was the sole proximate cause of the danger to which the passenger train was exposed, in an effort to avoid which Brooks lost his life; and this is sustained by the facts, unless Brooks, by voluntarily exposing himself to danger in order to save the pas-senger train from being wrecked, was guilty of contributory negligence. If the proposition of law embodied in the requested charge above set out, and here now insisted upon, is correct, it was error to refuse said charge. Keeping in mind the distinction between condition and cause, Is said proposition correct? One who suffers injury as the result of the negligence of another cannot recover damages for such injury if his own negligence contributed to the result. As a general rule, it is negligence for one to voluntarily expose himself to known danger. Why is it an exception to this rule if he does so in an effort to save another from death or serious bodily injury? Because negligence implies a failure to discharge a duty, and between the duty that one owes to look out for his own welfare, and the duty that he owes to look out for the welfare of others, to the extent at least of taking some risks to himself, the latter is the higher duty. "He saw his duty, a dead sure thing, and went for it, there and then." And the decisions show that the courts in a Christian land are not disposed to be "too hard on a man that died for men." See authorities cited in the McVey Case, supra. Is this any the less a duty if the conditions under which another is about negligently to inflict an injury on a third party has been brought about by himself? We think not. Appellant should have taken notice of those conditions, which it knew, or by the exercise of ordinary care could have known, and should have governed its actions accordingly. Appellant has cited us to no authority to sustain its contention. In the absence of authority impelling us so to do, we will not hold that one thus situated who yields to the dictates of humanity forfeits the right of his wife and children to recover damages for his death inflicted by the negligence of another.

We do not deem it necessary to further discuss the other grounds of appellant's motion for rehearing. Said motion is overruled.