SWIFT & COMPANY, Appellant,

v.

Fred G. BALDWIN, Appellee.

No. 6938.

Court of Civil Appeals of Texas.

Texarkana.

Feb. 14, 1957.

Rehearing Denied March 7, 1957.

Robertson, Jackson, Payne, Lancaster & Walker, Otis B. Gary, Dallas, for appellant.

Warren G. Moore, Tyler, Gordon R. Wellborn, Rex Houston, Henderson, for appellee.

DAVIS, Justice.

On or about December 14, 1953, Fred G. Baldwin, a pharmacist, was employed by Hughes Drug Store in Tyler, Texas. Swift & Company, hereinafter referred to as Swift, had placed a sign up in front of the drug store to advertise ice cream and other products of Swift that were being sold by Hughes Drug Store. The drug store was situated near two schools and many small school children patronized the drug store during lunch period, purchasing sandwiches, ice cream, etc., for their lunches. The sign that had been placed up in front of the drug store by Swift was about 18 feet long, about three feet high, framed with pine lumber, and had a "hardboard" surface. It was attached to and parallel with the front of the building in violation of a city ordinance, and had come loose at one end. During the lunch period on this particular day, the wind was blowing about 15 to 20 miles per hour, the sign was swinging back and forth (having come completely loose at one end) and some unidentified person called for some one to do something about the sign before it fell on some of the school children and killed them. Baldwin went immediately to a neighboring store, secured a ladder, placed it up beside the building near the sign, got one Dean Clark to hold the ladder while he, Baldwin, climbed upon it to try to hold the sign until help could come and prevent any injury to the school children. About the time Baldwin reached the top of the ladder, the sign came completely loose, the wind blew it against him, knocked Baldwin from the ladder to the concrete sidewalk, causing severe and permanent injuries.

Baldwin filed suit against Swift & Company; Joe Whitus, the man who erected the sign; and B. G. Johnson, local manager or salesman for Swift. Judgment was for Baldwin against Swift for the sum of

$30,000 for personal injuries and for $10,000 for medical expenses, past and future. Swift has appealed and brings forward 17 points of error. The parties will be referred to as in the trial court.

Trial was to a jury and upon completion of the evidence, Swift moved for an instructed verdict; basing its contention largely upon the ground that plaintiff was guilty of contributory negligence as a matter of law. The motion was overruled and in response to special issues the jury found: That Swift caused the sign to be placed within six feet of the outside wall of the drug store building, which was negligence and a proximate cause of plaintiff's injuries; the sign was owned by Swift on the date of the accident; Swift failed to properly inspect the sign, which was negligence and a proximate cause of plaintiff's injuries; the sign was insecurely fastened to the building; Swift knew or should have known the sign was insecurely fastened prior to the accident, and knew or should have known this for a sufficient length of time to have repaired the sign and after it knew or should have known this, it failed to repair the sign, which was negligence and a proximate cause of plaintiff's injuries; the sign was swinging over the sidewalk immediately prior to and at the time plaintiff climbed the ladder; school children were passing along the sidewalk in the immediate vicinity of the sign immediately prior to the time plaintiff climbed the ladder; the children were placed in a position of imminent peril by the sign swinging over the sidewalk; the position of imminent peril of the school children was such as to cause a person of ordinary prudence to go to the rescue; plaintiff climbed the ladder in attempt to rescue the children from injury or possible death; the position of imminent peril of the children would cause an ordinarily prudent person to go to their rescue without time for deliberation as to the consequences; and plaintiff acted as an ordinarily prudent person would have acted under the circumstances; the sign was a roof sign; plaintiff kept a proper lookout for his own safety; plaintiff did not fail to remain out of the place where the sign might fall when he knew or should have known that the sign might fall; the accident was not unavoidable; the accident was not due to an act of God; the sign was not given to Hughes Drug Store by Swift prior to the accident; and the sign had not been delivered by Swift into the exclusive care, custody and control of Hughes prior to the accident. The jury also found that plaintiff did not act in a careless and reckless manner in climbing the ladder to control the sign, and there were not any dangers incident to going upon the ladder in the attempt to control the sign; plaintiff was in a place of danger when he was on the ladder, but he was not negligent in placing himself in such position; and, plaintiff's employer did not instruct him to let the sign alone.

Swift filed a motion for judgment non obstante veredicto, setting up substantially the same grounds as in its motion for instructed verdict, which motion was overruled and judgment was entered for plaintiff in the total sum of $40,000.

By Point 1, Swift complains of the action of the trial court in overruling its motion for judgment non obstante veredicto and in rendering judgment for plaintiff and contends that the undisputed evidence shows there were dangers incident to going up the ladder as a matter of law which dangers were open and obvious; and, therefore, Swift owed no duty to plaintiff. Swift admits, with commendable frankness, that in view of the finding of the jury that it owned the sign at the time of the accident and had not delivered said sign into the exclusive care, custody and control of Hughes Drug Store, Swift must be treated in law as the owner and occupier of the premises and cites the case of City of Greenville v. Pitts, 102 Tex. 1, 107 S.W. 50, 14 L.R.A.,N.S., 979.

■ In support of its contention that the dangers were open and obvious Swift relies upon the case of Houston National Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374; McKee v. Patterson, 153 Tex. 517, 271 S.W.2d 391; and McElhenny v. Theilepape, Tex., 285 S.W.2d 940. We think the facts in this case readily distinguish it from those cases. This case was tried solely upon the theory of the rescue doctrine, which does not appear in either of the above cases. This Swift admits. Swift argues, then, that the highest position that plaintiff could occupy was that of an invitee; that plaintiff was charged with notice of the open and obvious dangers and that it owed no duty to the plaintiff at the time and on the occasion in question. We do not think the question of "invitee" or "licensee" or "no duty" is involved in the case. We think the question presented here was whether or not the school children were in a position of peril, and whether or not the plaintiff acted as a man of ordinary prudence in going to their rescue. The trial court decided that the pleadings and the evidence raised the issues and submitted the issues to the jury. We agree with the trial court and find as a fact that the evidence does raise the issues.

Our view in this matter is supported by Goolsby v. Texas & N. I. R. Co., 150 Tex. 528, 243 S.W.2d 386, wherein the court held that a person acting to save another from imminent peril is not held to the accountability of his own acts as one who acts upon careful choice after deliberation.

■ Swift also contends that the evidence shows that plaintiff acted in a rash and reckless manner as a matter of law. The record does not support such contention. There is no evidence that plaintiff acted in a rash, imprudent or negligent manner; therefore, it cannot be said that he was guilty of contributory negligence as a matter of law. Reddick v. Longacre, Tex.Civ.App., 228 S.W.2d 264, writ ref., N.R.E. Point 1 is overruled.

■ By Point 2 Swift complains of the action of the trial court in entering judgment for plaintiff, contending "that there is no evidence to raise the rescue doctrine". The evidence shows that some 100 to 150 children went in and out the drug store during the lunch period of each day and had to pass directly underneath the sign in entering and leaving the drug store. Plaintiff was going about his business in the prescription department of his employer when some unidentified person shouted through the front door: "Somebody better do something with this sign, it is loose and is going to kill a bunch of children!" Plaintiff investigated and decided that under the circumstances it was necessary to do something to prevent the danger that existed. He secured a ladder, had some one hold it until he could climb to the top which he thought he could do in safety to himself and thereby prevent injury to others. His error of judgment was not such that would be calculated to amount to an act of contributory negligence under the circumstances. What Baldwin did is more in keeping with the act of a prudent person rather than otherwise where the fact of danger to school children is considered, it would be an imprudent person who would not make haste to secure their safety. It is not an uncommon thing for a person to climb upon a ladder, and it appears that plaintiff was using caution to prevent injury by having some one to hold the ladder for him. It cannot be disputed that the sign was in danger of falling, because it did fall just about the time plaintiff caught hold of same. We will note here that one witness testified that Johnson, manager or salesman for Swift, made a statement to plaintiff after the accident that he, Johnson, knew the day before the accident that the sign was loose. Johnson vigorously denied making such statement but the jury resolved it against him. There is sufficient evidence to warrant the submission of the issues to the jury and the trial court would have been in error had he not done so.

■ Swift continues to argue that the doctrine of volenti non fit injuria (voluntary encountering risk) is applicable to the case at bar and in applying such doctrine, plaintiff was just guilty of negligence as a matter of law, and in such case, it owed no duty to plaintiff and Swift is just not liable. We pause here to note that one of plaintiff's witnesses testified that he would have done the same thing that plaintiff did and did not foresee any danger at all for plaintiff in climbing the ladder and attempting to control the sign. This witness was Dean Clark who held the ladder for plaintiff, and the case of San Antonio & A. P. R. Co. v. Engelhorn, 24 Tex.Civ.App. 324, 62 S.W. 561, error dism., supports our conclusion. Without quoting from the opinion, we suggest a careful study of same. Then, in the case of Weatherford, M. W. & N. W. Ry. Co. v. Duncan, 10 Tex. Civ.App. 479, 31 S.W. 562, affirmed 88 Tex. 611, 32 S.W. 878, holds that a person going to perform a dangerous duty, not ordinarily his, and removes from the usual location of his job, was not a volunteer, but was trying to protect the property of his employer, a duty which he owed to the employer.

A case in which the Supreme Court went much further than we have to go to affirm this judgment is McAfee v. Travis Gas Corp., 137 Tex. 314, 153 S.W.2d 442, 446, wherein the court said:

"We interpret the opinion of the Court of Civil Appeals to hold that because McAfee went to the place where this pipe line was leaking, with full knowledge of the facts, and with full knowledge that such leaking pipe line was an object of danger, he was guilty of contributory negligence as a matter of law. We are unable to agree to such a conclusion. The mere fact that a person may expose himself to a danger will not preclude a recovery. *In order to preclude a recovery the danger must be such that a person of ordinary prudence under like cir-*

*cumstances would not subject himself to it.* 28 C.J. 598. The mere fact that a person may participate in an operation attended by some latent danger will not render him guilty of contributory negligence as a matter of law. It is the established rule in this State that even where a person has knowledge, actual or imputed, of a defect, a question of fact as to negligence is presented unless it can be said, as a matter of law, that a person of ordinary care would not have incurred the risk. Gulf, C. & S. F. Ry. Co. v. Gascamp, 69 Tex. 545, 7 S.W. 227; Gulf, C. & S. F. R. Co. v. Irick, Tex.Civ.App., 116 S.W.2d 1099; 30 Tex.Jur. p. 764, § 96; Northcutt v. Magnolia Petroleum Co., Tex.Civ.App., 90 S.W.2d 632, writ refused.

*       *       *       *       *       *

"Also under the fact detailed, the question as to the negligence of McAfee was a question for the jury. The mere fact that he knew about these leaks and knew that they constituted a dangerous condition would not, under the facts of this record, render his act of showing them to Joe Woods negligence as a matter of law." (Emphasis added).

In the case of Wichita Falls Traction Co. v. Hibbs, Tex.Civ.App., 211 S.W. 287, no writ history, the doctrine of volenti non fit injuria and contributory negligence, *when applicable*, serves to lessen the degree of care which a rescuer must exercise for his own safety. A careful study of this case supports the conclusions reached by the trial court and approved by this Court. Other cases tried and affirmed on the rescue doctrine are: San Antonio & A. P. Ry. v. Gray, 95 Tex. 424, 67 S.W. 763; Missouri, K. & T. Ry. Co. v. Goss, 31 Tex.Civ. App. 300, 72 S.W. 94, error refused; International & G. N. Ry. Co. v. McVey, Tex. Civ.App., 81 S.W. 991, no writ history; Houston & T. C. Ry. Co. v. Goodman, 38 Tex.Civ.App. 175, 85 S.W. 492, error ref.; Texas & N. O. Ry. v. Scarborough, Tex.

Civ.App., 104 S.W. 408, affirmed, 101 Tex. 436, 108 S.W. 804; Gulf C. & S. F. Ry. Co. v. Brooks, 63 Tex.Civ.App. 231, 132 S.W. 95, error ref.; Panhandle & S. F. Ry. Co. v. Haywood, Tex.Civ.App., 227 S.W. 347, error ref.; and Reddick v. Longacre, Tex. Civ.App., 228 S.W.2d 264, error ref., N.R.E.

█ To demonstrate our holding that the question of invitee or licensee, or "no duty" is involved in this case, we state what we think to be an appropriate hypothetical situation: If a person should be standing beside a street and see a truck come speeding down the wrong side of the street and a little child in its path, it would be the normal thing for him to do to try to rescue the child; especially, if there appeared to be a possibility of saving the life of the child or preventing it from being injured. And, ordinary human impulses would not cause a person to pause at all and survey the possibilities of what might happen to the rescuer in the rescue attempt. Under such circumstances, the rescurer would be neither invitee nor licensee. The truck driver would owe the rescuer, as well as the child, the duty of driving his truck at a legal rate of speed and on the proper side of the road before he created the position of peril. Thus, Swift owed those school children the duty of eliminating the hazard with which they were confronted, and when the plaintiff went to their rescue, it did not alleviate that duty. Points 2 through 11 are overruled.

█ By Points 12 through 15, Swift complains of the action of the trial court in refusing to permit it to offer into evidence certain complaints, informations, and judgments of conviction against plaintiff, all of which were dated September 17, 1946. Swift contends that these documents were material evidences to determine whether or not plaintiff was motivated by humanitarian impulses in going to the rescue of the children. First, we think the evidence was too remote and would not have the slightest tendency to establish Baldwin's humanitarian impulses at the time and on the occasion in question. The complaints, informations and judgments pertain to certain aggravated assaults committed by the plaintiff upon a man and a woman. Swift contends that the instruments were offered for the purpose of showing plaintiff's impulses, emotions and inclinations were not those of an ordinary person. There was no evidence offered to establish such motives at or about the time of the accident. Further, we think there is involved a question of duty to his employer and the employer's customers, the school children, and such motives would not be a controlling factor. Certainly not so without a more immediate showing of such living motives. Swift cites only one case in support of its contention. Texas Employers Ins. Ass'n v. Thames, Tex.Civ.App., 236 S.W.2d 203, error ref. In that case, the insurance company offered evidence to show that the plaintiff was suffering a nervous disorder because of the fact that his son had recently been convicted of a crime that produced his nervous condition, or contributed to it rather than that the injury for which he was suing caused such reactions. The court was absolutely correct in its holding that because a present condition was alleged to exist at the very time of the trial and the jury was entitled to hear the testimony and pass upon the issue raised. Further, a party's character which would unquestionably have a bearing upon his living motives, cannot be proved by specific acts. McCormick & Ray's Texas Law of Evidence, p. 68; Grant v. Pendley, Tex.Com.App., 39 S.W.2d 596, 78 A.L.R. 638, and authorities cited therein; Jones on Evidence, Sec. 148.

The evidence in this case is not conflicting as to any open and obvious dangers, although, Swift places a different construction upon it than that of the jury, the trial court and this Court. If the evidence was conflicting, and the conflict was resolved in favor of the plaintiff, it would not defeat recovery on the theory that he assumed the risk of injury under the doctrine of volenti non fit injuria, because the

evidence does not show that plaintiff acted with full knowledge of the nature and extent of the danger involved when he climbed upon the ladder. Page v. Scaramozi, Tex.Civ.App., 288 S.W.2d 909, wr. ref., N.R.E.

Points 12 through 15 are overruled.

██ By Point 16, Swift complains of the action of the trial court in overruling its motion for new trial because of alleged jury misconduct in discussing and taking into consideration the question of attorney's fees in arriving at their answers to the damages issues. A full and complete hearing was had upon this matter and the evidence shows that during the course of deliberations and at a time when the jury had reached the first damages issue which inquired of the damages suffered by plaintiff as a result of the injuries, *exclusive of the doctor bills*, and one of the jurors mentioned the sum of $50,000. Subsequently, yet while only this issue was being discussed, some of the jurors mentioned a lesser sum, the exact amount of which is not shown. There was a conflict of testimony as to what was said about attorney's fees; only one of the jurors testifying very favorably to Swift and the trial court did not believe his testimony. After the sum of $50,000 was mentioned, as well as the question of attorney's fees, the jury agreed to the sum of $30,000 on the issue being discussed. We agree with the trial court that no injury was shown. The findings of fact and conclusions of law of the trial court as to jury misconduct must be sustained. 4 McDonald Civil Practice, 1250. The finding of the trial court being supported by the evidence in the record, we are bound thereby. Bowles v. Penny, Tex. Civ.App., 295 S.W.2d 291; St. Paul-Mercury Indemnity Co. v. Bearfield, Tex.Civ. App., 296 S.W.2d 956. Point 16 is overruled.

Swift's Point 17 is without merit and is respectfully overruled.

The judgment of the trial court is affirmed.