**Selma KELLEY et vir, Appellants,**

v.

**Mrs. Helen C. ALEXANDER, d/b/a Beekman's Roto-Rooter Sewer Service, Appellee.**

No. 14387.

Court of Civil Appeals of Texas.

San Antonio.

June 9, 1965.

Rehearing Denied July 6, 1965.

Reid & Taylor, San Antonio, for appellants.

Clemens, Knight, Weiss & Spencer, Edward R. Finck, Jr., San Antonio, for appellee.

BARROW, Justice.

This appeal relates to the volenti non fit injuria concept of assumed risk. Plaintiffs, Selma Kelley and husband, John Kelley, appeal from a summary judgment granted defendant, Mrs. Helen C. Alexander, d/b/a Beekman's Roto-Rooter Sewer Service, in a suit to recover damages sustained by plaintiff Mrs. Kelley when she fell in a hole in her yard which had been dug by defendant's employees. The motion for summary judgment was based on the pleadings and deposition of Mrs. Kelley.[1]

On March 26, 1962, defendant was employed by plaintiffs to remove roots from a sewer line on plaintiffs' property. In performing this work, defendant's employees dug a hole 3′ x 4′ in diameter and about 4′ deep in plaintiffs' yard. Mrs. Kelley saw this hole and was afraid that a small child would fall into it, as two neighborhood children, about three or four years of age, played in her yard "continuously." She furnished a board to an unidentified man working on her property and he covered

the hole before leaving the premises the first day. She admitted that she had painters and carpenters working on her property at this time and did not know if this man worked for defendant or one of the other craftsmen. She didn't recall telling one of defendant's employees to cover the hole. About 5:00 p. m. on the following day, after the workmen had left, she looked out the window and saw this gaping hole. She testified that she was afraid the children would fall in. There was a large limb from a tree she had trimmed close to the hole, and she decided to drag the limb over the hole to discourage the children from approaching it. In doing so she slipped and fell into the hole. No one was present at the time. Mrs. Kelley admitted that this occurred in broad daylight and that the dangerous condition of the hole was open and obvious to her.

On November 19, 1964, the trial court sustained defendant's motion for summary judgment and entered a take-nothing judgment. On November 30 plaintiffs filed a motion to vacate the judgment and asserted that the "rescue doctrine" was raised by Mrs. Kelley's testimony. This motion was overruled and plaintiffs perfected this appeal.

Appellants concede that the danger was open and obvious to Mrs. Kelley, but urge that she did not assume the risk thereof under the "rescue doctrine." This exception was recognized by the Supreme Court in Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (1963), wherein it was said:

"A basic difference between contributory negligence on the one hand, and 'no duty' and *volenti* on the other, is the question of justification. Whether the plaintiff's conduct was justified may

---

1. Plaintiffs pleaded that while performing plumbing work on plaintiffs' property defendant dug a hole near plaintiffs' house and was negligent (1) in failing to properly erect barricades; (2) in failing to cover the excavation; (3) in failing to place flares around the excavation, and (4) in failing to give adequate warning of the dangerous condition.
Defendant asserted a general plea of contributory negligence, and affirmatively alleged that the excavation was open and obvious and well known to Mrs. Kelley, and that she voluntarily assumed the risk of falling into the hole.

be an evidentiary consideration in deciding that a person of ordinary prudence should, or should not have so acted, but it is not a separate ultimate inquiry or issue. The question of plaintiff's justification is not ordinarily involved in the 'no duty' concept. A person may voluntarily expose himself to a known risk and *not* be contributorily negligent, depending upon why he exposed himself; i. e., his conduct may have been that of an ordinary prudent person under the circumstances. For example, a mother going into a burning building to save her child, or a person crossing a defective bridge when it is the only way of travel. * * * On the other hand, if the occupier owes 'no duty' to the invitee because the invitee knows and appreciates the danger, or if the plaintiff deliberately and voluntarily encounters a known risk under the *volenti* doctrine, the plaintiff cannot recover. There may be some exceptions, such as where the plaintiff is motivated by humanitarianism or rescue impulses."

 Under the "rescue doctrine," one who attempts to rescue another placed in imminent peril by the negligence of the defendant is not to be found guilty of contributory negligence as a matter of law, nor does he assume the risk incident thereto unless he acts in a rash, imprudent or negligent manner. Sinclair Ref. Co. v. Winder, Tex.Civ.App., 340 S.W.2d 503, wr. ref.; Keystone-Fleming Transport, Inc. v. City of Tahoka, Tex.Civ.App., 315 S.W.2d 656, wr. ref., n. r. e.; Reddick v. Longacre, Tex. Civ.App., 228 S.W.2d 264, wr. ref., n. r. e. The basis of this rule is that the defendant negligently created a situation that provoked the rescue effort and the rescuer's resulting injury was something that could reasonably have been foreseen by the negligent defendant and was a natural and probable result of such negligence. Longacre v. Reddick, Tex.Civ.App., 215 S.W.2d 404, mandamus overruled; Shultz v. Dallas

Power & Light Co., Tex.Civ.App., 147 S.W. 2d 914, wr. dism. judgm. correct; 40 Tex. Jur.2d, Negligence, § 117; Restatement of Torts, § 893.

 It is our opinion that the "rescue doctrine" has no application in the case at bar. There were no pleadings by appellants to raise this issue of excuse. See Rash v. Ross, Tex.Civ.App., 371 S.W.2d 109, wr. ref., n. r. e. The first time it was raised or injected in the case was after the motion for summary judgment had been heard and the take-nothing judgment entered. This was too late under Rule 166–A, Sec. (c), Texas Rules of Civil Procedure.

 Furthermore, we do not believe that the "rescue doctrine" is raised under the facts in this case. There is no showing that anyone was in imminent peril. No one was present when Mrs. Kelley went out to place the limb over the hole. There is no basis for the "rescue doctrine" where no one is in imminent danger and the circumstances afford no reasonable basis for believing otherwise. It requires more than a mere suspicion that an accident might happen to justify one to incur an obvious danger on the theory that human life or limb is in imminent peril. 65 C.J.S. Negligence § 124; 38 Am.Jr., Negligence, § 228. This requirement is best illustrated by examining the facts in cases where the doctrine has been applied.

In Sinclair Refining Co. v. Winder, supra, plaintiff was injured when he stepped on a pile of slag on a railroad track while attempting to halt unattended cars rolling downhill toward workers who were unaware of the danger. In the Reddick v. Longacre case, supra, plaintiff was injured when an explosion occurred while he was attempting to rescue a truck driver from a burning truck. In Swift & Co. v. Baldwin, Tex. Civ.App., 299 S.W.2d 157, no wr. hist., the jury found that school children were passing along the sidewalk in the immediate vicinity of a loose sign and were in im-

minent peril immediately prior to the time plaintiff climbed a ladder to try to secure the sign before it fell on one of the children.

The evidence in this case does not show that Mrs. Kelley voluntarily exposed herself to danger to rescue another person from imminent peril, but rather that she was discharging her duty as owner of the premises in making the premises safe for the small children who she knew frequented same. In doing so she knowingly and voluntarily assumed the risk of falling in the hole dug by appellee's employees. In this situation the volenti doctrine bars her recovery.

The judgment is affirmed.

CADENA, Justice.

I am unable to agree with my brethren in this case and feel compelled to set forth the reasons for my disagreement.

Defendant's answer in this case consisted of a general denial, a general plea of contributory negligence, an allegation that the excavation was open and obvious, and a plea that plaintiff had voluntarily assumed the risk of falling into the open hole. Defendant's motion for summary judgment was based on the pleadings and on plaintiff's deposition.

The summary judgment in favor of defendant cannot be sustained on the theory that plaintiff's deposition established that she was contributorily negligent as a matter of law. The deposition does not establish any failure on the part of plaintiff to exercise due care, and defendant filed no affidavits stating any acts or omissions on plaintiff's part which would amount to negligence. Unless we are prepared to hold that the occurrence of the accident, per se, conclusively established that plaintiff was contributorily negligent, the deposition does not compel the inference that plaintiff failed to exercise due care.

The only possible basis for the rendition of summary judgment in this case is the doctrine of voluntary assumption of risk. Since it is undisputed that plaintiff was aware of the existence of the uncovered excavation and that she realized the danger inherent in the situation, it is only necessary to decide whether the doctrine of voluntary assumption of risk is applicable to this case.

In Halepeska v. Callihan Industries, Inc., 371 S.W.2d 368 (Tex.1963), a majority of our Supreme Court, in an exhaustive opinion by Justice Greenhill, attempted to establish guide lines for the application of the doctrine in Texas. Justice Greenhill divided assumption of risk into two distinct, but not always distinguishable, concepts. The "no duty" concept or branch of the doctrine is, according to the Halepeska opinion, applicable only where the injury occurs on the land of the defendant and the injured party is on defendant's land as an "invitee." The *volenti (volenti non fit injuria)* aspect of the doctrine, while it may be applicable in the landowner-invitee situation, apparently is the concept which will be applied in all other cases.

In this case, the condition which caused the injury was on the land of plaintiff. Plaintiff was not on the land as the invitee of defendant. It is apparent, then, that we are not concerned with the "no duty" aspect of voluntary assumption of risk. Defendant must rely on the *volenti* aspect of our two-headed rule.

Under the *volenti* rule, as expounded in Halepeska, the burden was on defendant to plead and prove that plaintiff had knowledge of the condition, that she knew the condition to be dangerous and fully appreciated the nature and extent of the danger, and that she voluntarily exposed herself to such danger. Greenhill, Assumption of Risk, 16 Baylor L.Rev. 111, 112, 116 (1964).

*Volenti* is based on consent. As Justice Greenhill said in Halepeska, "Under the *volenti* defense, voluntary exposure to the known risk has been held to be a necessary inquiry." 371 S.W.2d at p. 380. In Dee v. Parish, 160 Tex. 171, 327 S.W.2d 449, 452 (1959), Justice Walker said, "This (*volenti*) doctrine is based on knowledge and appreciation of the danger and *voluntary assent* thereto." (Emphasis added) Assumption of risk is, as one writer has said, "rooted in the underlying philosophy of choice." Mansfield, Informed Choice in the Law of Torts, 22 La.L.Rev. 17, 47 (1961).

I do not believe that the record before us establishes that plaintiff voluntarily assented to exposure to the danger. Since, under Halepeska, defendant had the burden of proving every element of the *volenti* defense, and since the record is insufficient to establish "voluntary assent," it follows that the summary judgment was improperly granted.

There can be no true volition unless there is a choice between at least two alternatives, neither of which involves the abandonment of a legal right or the relinquishment of a legal duty. The general principle is that one who has a legal right, or is under a social or legal duty, to act as he has under conditions created by defendant's wrong does not act voluntarily. His action is caused by the coercion of the environment which defendant has created. Bohlen, Voluntary Assumption of Risk, 20 Harv.L.Rev. 14, 21 (1906).

There are many situations where the doctrine of assumption of risk has been held to be inapplicable. (1) Where a traveler uses a highway which has not been closed for repairs. (2) Where a tenant uses a hall, stairway or other common portion of the premises which has remained under the control of the landlord who has the duty of safe maintenance. (3) Where a patron of a public utility uses a part of its premises or its equipment which is appropriate to be used in order to secure the services which the utility is bound to perform for the public. (4) Where a landowner's access to his premises has been impeded by defendant's act, and he incurs the risk to gain access. (5) Where defendant's wrong injures a plaintiff who is at a place where he has a right to be irrespective of defendant's consent. (6) Where plaintiff moves to a nuisance or uses his land in such a way as to increase the hazard caused to it by defendant's wrongful use of his land. (7) Where plaintiff seeks to rescue another person, or his or another's property, which is endangered by defendant's negligence. 2 Harper and James, The Law of Torts (1956), § 21.1, pp. 1165–1167.

It is seen that in all of the situations where the doctrine is held to be inapplicable the injured plaintiff, at the time of the injury, had a legal right to do what he did, or to be where he was, irrespective of the defendant's consent; or else the defendant's conduct had threatened plaintiff's person or property, or the person or property of some person to whom plaintiff owed either a legal or social duty. That is, plaintiff is not held to have assumed the risk if, at the time of the injury, he was exercising a right which did not depend on defendant's consent, or if he was performing a duty.

In this case, the "evidence" establishes that plaintiff was on her own land, where she had a right to be. Her right to be there was not dependent on a consent which defendant was free to give or withhold. A landowner cannot be required to surrender a valuable legal right, such as the right to use his land as he sees fit, merely because a defendant's conduct threatens physical harm if plaintiff exercises his right. Prosser, The Law of Torts (2d ed., 1955), § 55, p. 212. A legal right which can be exercised only on condition that the holder of the right agree to relieve a wrongdoer from all liability for misconduct is a right of little value. The doctrine of assumption of risk was born of the law's solicitude for the rights of landowners. To apply the

doctrine here would be to use the doctrine for the purpose of allowing a landowner's rights to be burdened by the threat of non-compensable injury if it is exercised. Neither precedent, reason nor logic compel such a result.

My brethren conclude that the so-called "rescue" doctrine is inapplicable here because, at the time plaintiff was injured, no person other than plaintiff was near the danger area. That is, it is insisted that the record reflects that, at the time of the injury, no one was in "imminent" peril. This contention is supported by referring to Swift & Co. v. Baldwin, Tex.Civ.App., 299 S.W.2d 157, no wr. hist. The findings of the jury in that case seem to negative the possibility that, at the time the plaintiff attempted to eliminate the dangerous condition (a loose sign overhanging a public sidewalk), any person was in imminent peril. There was no finding that any person was in danger at the time the rescuer acted. The jury found that some children were in the danger area immediately "prior" to the time that plaintiff attempted to eliminate the hazard. So, plaintiff's conduct there was prompted, not by the fact that a child was then and there in the danger zone, but by his knowledge that children had been and would again be present in the area of peril and *would be placed* in a position of imminent danger.

In this case the record discloses that children, three or four years of age, "continuously" played in plaintiff's yard in the area where defendant had left the excavation unguarded. Plaintiff, therefore, knew that children had been in the area, and that they probably would be there again. She realized the danger inherent in the situation and acted to prevent injury to the infants. The facts of this case, then, bring it within the rule applied in Swift & Co.

But even if we read into the Swift and Co. decision the fact that, at the time the "rescuer" was injured, children were in the hazardous area, and even if it be conceded that there cannot be a "rescue" situation unless someone is, at the very moment of the rescue attempt, in imminent peril, this does not mean that plaintiff in this case voluntarily assumed the risk. In the typical "rescue" situation, the plaintiff is a volunteer who is under no legal duty to protect the person in danger. He acts out of a sense of moral responsibility or in performance of what has been called a social duty.

In this case, plaintiff knew of the prior presence of the children who played in her yard "continuously." She not only had reason to foresee, but she knew, that they would be there again. Both parties agree that the uncovered and unguarded excavation was dangerous. Under these circumstances, it seems clear that plaintiff was under a *legal*, as distinguished from a mere social, duty to take reasonable precautions to prevent injury to the children. Eaton v. R. B. George Investments, Inc., 152 Tex. 523, 260 S.W.2d 587 (1953).

Where, as here, plaintiff acts in performance of a duty imposed by law, it would be absurd to insist on the presence of a person in "imminent" peril. Such insistence would mean that plaintiff, although she realized the danger to the infants and was under a legal duty to protect them, would have to delay performance of her duty, standing by patiently, until a child approached the danger zone before she could act to perform her legal duty. Only when the peril became "imminent," and, apparently, not one moment before, would she be free, without relieving defendant of liability, to rush out frantically, hoping that she would arrive in time. If she delayed too long, she would be liable for the injury to the children. If she started her "rescue" attempt too soon she would, under the majority opinion herein, have agreed to look out for herself and to relieve defendant of all liability.

If plaintiff had taken no precautionary measures and a child had been injured by tumbling into the unguarded excavation, would the judicial ear be responsive to her explanation that she knew of the danger to the children but decided not to act because of the risk involved to herself? The past decisions of this State make it clear that her failure to act would result in liability. Today we slam the courthouse door in her face because she acted.

From what has been said it is apparent that plaintiff was not in a position to choose freely. Absence of restraint is essential to freedom of choice. Defendant, by failing to take the simple precaution of covering the pit, placed plaintiff in a position where she had to choose between the risk of injury to herself, on the one hand, and the abandonment of a right as well as the breach of a legal duty on the other. To hold that by choosing to exercise her right she "consented" to relieve defendant of liability is to minimize the value of her right to use her land. To hold that by electing to perform a duty imposed on her by law she "voluntarily" assumed the risk of injury to herself is to punish those who perform their legal obligations.

As Justice Greenhill said in Halepeska, "By and large, the 'no duty' and *volenti* doctrines are relatively harsh doctrines which go beyond ascertaining whether the plaintiff failed to exercise ordinary care under the circumstances and hence was contributorily negligent. * * * We therefore here feel required to recognize justifiable limits on the doctrines of 'no duty' and *volenti*." 371 S.W.2d at p. 380. Again, Halepeska recognizes that there are "exceptions" to which the doctrine is not applicable, "such as where the plaintiff is motivated by humanitarianism or rescue impulses." 371 S.W.2d at p. 379.

Our Supreme Court has thus explicitly recognized that assumption of risk is a harsh doctrine which requires the recognition of limitations on its application. My brethren would extend its application to this case, saying that considerations of plaintiff's justification or motivation are irrelevant in determining its application. Certainly the Halepeska opinion, which recognizes exceptions where plaintiff is "motivated" by humanitarianism or rescue impulses, does not support the conclusion that justification and motivation are irrelevant. Nor did Justice Greenhill, in his article in 16 Baylor L.Rev. 111, completely condemn motivation and justification to the limbo of things which are irrelevant in the application of the doctrine of *volenti*. He merely said that such considerations were irrelevant in the ordinary case. The "ordinary case" involving the doctrine of assumption of risk is a landowner-invitee or a master-servant situation. In such cases, the plaintiff's right to be present at the scene of the injury is dependent on a consent which the defendant is free to grant or withhold at his pleasure. We have no such case here.

To apply the "harsh" *volenti* doctrine in this case is to discourage landowners from exercising ordinary care on their land to protect others from injury. A rule which brings about such a result serves no socially desirable purpose. Imposing liability on the defendant in this case will discourage no person from performing his legal duties. Since the decision we make today will affect the conduct of others tomorrow, we should attempt to shape our laws along lines which will encourage the performance of legal duties. To do otherwise is to drain the law of its vital juices.

I would reverse the judgment of the trial court and remand the cause for a trial on its merits. Under the circumstances of this case, the rights and interests of the parties can be adequately protected by the application of the ordinary rules of negligence and contributory negligence.