## Missouri, Kansas & Texas Railway Company of Texas v. Mrs. Sallie Goss et al.

### Decided January 24, 1903.

**1.—Railway—Negligence—Injury to Flagman.**

Where a railroad flagman whose station was at a street crossing was run over by a switch engine that was running backwards at a speed in excess of that prescribed by the city ordinances, and with no switchman on the footboard of the engine tender, as required by the rules of the company, a finding of negligence on the part of the company was justified.

**2.—Same—Assumed Risk.**

While the flagman assumed the risks of injury incident to his employment there, he did not assume the risk in this case, since it was negligence on the part of the company to run the engine at a rate in excess of that prescribed by the city ordinance, and to have no switchman on the tender whose business it would have been to have stopped the engine by the use of the air-brakes provided for that purpose.

**3.—Same—Contributory Negligence.**

An employe of a railway company who loses his life in the performance of the duties of his position is not chargeable with contributory negligence.

**4.—Same—Same—Flagman at Street Crossing.**

It being the duty of the flagman to give warning of approaching trains at the street crossing, and such duty requiring him to frequently cross the railroad track, he was not guilty of contributory negligence where he went upon the track in front of an approaching train for the purpose of giving warning to some ladies who were crossing the track, and were apparently in danger of being run over, although in order to give them warning it was necessary to turn his back upon the approaching train, and although he saw the approaching train before he went upon the track.

Appeal from the District Court of Grayson. Tried below before Hon. Rice Maxey.

*T. S. Miller,* and *Head & Dillard,* for appellant.

*W. J. Matthis, H. H. Cummins,* and *Wolfe, Hare & Semple,* for appellee.

TEMPLETON, Associate Justice.—Robert Goss was engaged in the service of the Missouri, Kansas & Texas Railway Company of Texas in the capacity of flagman at the Main street crossing in the city of Denison. He was struck by a switch engine and killed while on duty on April 12, 1901. His wife and children brought suit to recover the damages sustained by them on account of his death, and on a jury trial obtained a judgment from which the company has appealed.

The assignments of error presented and urged by appellant question the sufficiency of the evidence to sustain the verdict, and a reversal is asked on that ground alone.

Main street, in the city of Denison, runs east and west and is 100 feet wide. Appellant's depot is situated just north of said street, and its freight house is located directly west of the depot. Eight tracks of appellant cross Main street at right angles between the depot and the

freight house. The flagman's shanty is situated between the fourth and fifth tracks and at the south edge of the street. The said two tracks are twenty-three feet apart and the other tracks some eight or ten feet apart. There is a plank walk on each side of the street which extends across the tracks. The ground is practically level at the crossing, and for some distance north and south thereof, and the tracks are substantially straight in both directions. The engine which struck Goss was backing north, pulling thirty-one empty coal cars, which were being made into a train. It was on the track which lay immediately east of the flagman's shanty, and struck Goss at a point almost opposite the shanty. When struck he fell back on the track, and caught hold of the foot board of the tender. He was dragged across the street in that position. When he struck the walk on the north edge of the street, he was dragged under the engine and killed. The engine was stopped just after it crossed the walk. The accident occurred about the middle of the afternoon.

The occupation of Goss was a hazardous one, and he assumed the risks ordinarily incident thereto, but did not assume any risk arising from the negligence of his employer. If he was killed as a result of exposure to the risks assumed by him, his wife and children are not entitled to recover herein, but if he lost his life in consequence of the negligence of the company, they are entitled to recover unless he was himself guilty of negligence which contributed to his death. Bonnet v. Railway Co., 89 Texas, 72; Railway Co. v. Bingle, 91 Texas, 287; Railway Co. v. Hannig, 91 Texas, 347.

The first question to be considered is whether the evidence was such as to justify the finding of the jury that the death of Goss was caused by the negligence of the company. As stated above, the engine which struck Goss was backing down the track pulling a number of coal cars, the tender being in front. The tender was equipped with a square tank, which prevented the engineer from seeing the track in the direction he was going. A tender with a sloping tank would not have so obscured the view of the engineer. The tender was provided with a footboard at the back end thereof, which end was being operated in front at the time of the accident. The footboard was about twelve inches above the track, and the object of its use was to enable some one to ride there whenever occasion required. There was an angle-cock which could be used by one riding on the footboard, and by means of which the air could be applied and the engine stopped. There was no one on the footboard when Goss was struck. There was a rule of the company which required a switchman to be stationed on this footboard when the engine was being backed over a street corssing. Some question as to the application of the rule to this particular engine is raised, but we think the rule must be held to apply. The evidence is decidedly conflicting in regard to the speed of the engine in question at the time of the accident. It is sufficient to warrant the conclusion that the engine was being operated at a rate of speed in excess of six miles per hour, which is the limit fixed by an ordinance of the city at which an engine may be operated at such places.

A passenger train had arrived a few minutes before the accident. Another passenger train was in the yards, and was expected at the depot. The said crossing is more frequented than any other in the city, and a large number of people were on the grounds about the depot at the time.

In our opinion, the facts stated are sufficient to warrant the inference drawn by the jury that the company was guilty of the negligence charged against it. The running of such an engine backward, without a switchman on the footboard, at such place and at the rate of speed shown, was not an exhibition of that care which prudence would seem to require. The shape of the tank made it impossible for the engineer to see in the direction he was going at the point most important to be under his observation, and rendered it necessary for some one to be on the footboard. The failure to have a switchman on the footboard would be excusable, if at all, only when the engine was being run at the very slowest speed. The danger of striking some person at the crossing was manifest, and required the utmost circumspection on the part of the operatives of the engine. But do these facts constitute negligence as to the flagman? We think so. The duties of his position made it necessary for him to be continually crossing the tracks, and to be on the lookout for trains, in order that he might warn passers-by of their danger. Those in charge of the engine were not required to so operate the engine as to protect the flagman from dangers which he might have foreseen as being likely to arise in the ordinary and proper conduct of the company's business. With as much reason, they should not have operated the engine in such manner as to expose Goss to hazards not incident to the business when so conducted. The flagman had a right to assume that engines passing the crossing would be operated with the caution required under the circumstances and in accordance with the ordinances of the city and the rule of the company, and would be justified in acting on the assumption. The manner in which the engine in question was operated was not only negligence as to passers-by, but was negligence as to the flagman, since it exposed him to unnecessary danger, which he ought not to have been expected to foresee and guard against. If the engine had been run at the proper speed he might have avoided injury, and if a switchman had been on the footboard the engine might have been stopped by the use of the angle-cock, or Goss warned of his danger in time to have escaped from the track. It is not unreasonable to attribute his death to the failure of the company in its duty to him, if he was not guilty of negligence which contributed to the loss of his life.

Was he guilty of such negligence? He was on the track when struck; the track was level and straight, and there was nothing to prevent him from seeing the approaching engine had he looked, and it was his duty to be on the lookout for engines. On the other hand, it was shown that just before the accident occurred two ladies were crossing the tracks by way of the walk on the north side of the street, and that they appeared to be in danger of being run over, and seemed insensible of their peril; that Goss observed their situation, and warned them of their dan-

gerous position by waving his flag and calling out to them; that in order to accomplish his purpose it was necessary for him to face the north or northwest, and to turn his back in the direction the engine which struck him was coming. And we think it is a reasonable inference from the evidence that he was on the track in the peformance of his duty; that he was prevented from becoming aware of his own danger, and from protecting himself by reason of his efforts to save the lives of the two ladies, and that after he had warned the ladies there was not sufficient time, before he was struck, to look out for the engine which struck him and retire to a place of safety. These facts explain and excuse his conduct. "One who endangers his own life in order to save the life of another person is not chargeable with being a trespasser upon the railroad track, nor does his entering upon the track in the presence of danger for such purpose lay him liable to the charge of contributory negligence." Railway Co. v. Gray, 95 Texas, 424, 67 S. W. Rep., 763. "The law has so high a regard for human life that it will not impute negligence to an effort to preserve it unless made under such circumstances as to constitute rashness in the judgment of prudent persons. For a person engaged in his ordinary affairs, or in the mere protection of property, knowingly and voluntarily to place himself in a position where he is liable to receive serious injury is negligence which will preclude a recovery for an injury so received, but when the exposure is for the purpose of saving life it is not wrongful, and therefore not negligent, unless such as to be regarded either rash or reckless." Eckert v. Railway, 43 N. Y., 503. So, even if Goss knew that the engine was approaching,—and it is not clear that he did,—the question as to whether his going on the track was necessary, and was not rash or reckless, considering the reason for his action, was properly left to the jury, and their finding thereon is conclusive. The evidence regarding the movements of the deceased immediately preceding the accident is hopelessly conflicting, but there is no real controversy about the fact that just before he was struck his attention was absorbed in warning the ladies off the tracks, and that his conduct indicated that he considered them to be in a perilous position. It seems clear that this fact accounts for his failure to observe and avoid the danger to himself. The conclusion follows that he lost his life in the performance of the duties of his pósition, and is not chargeable with negligence. Railway v. Roney, 89 Ind., 453.

Since his death resulted from the careless operation of the engine, and not from one of the ordinary risks of his employment, the verdict of the jury holding the company liable in damages to those dependent upon him, should be affirmed.

*Affirmed.*

Writ of error refused.