SOUTHWESTERN HYDROCARBON
COMPANY, Appellant,

v.

Bob THOMPSON, Appellee.

No. 3955.

Court of Civil Appeals of Texas.

Waco.

March 15, 1962.

Rehearing Denied April 5, 1962.

Roe, Ralston & McWilliams, Corsicana, Thompson, Knight, Wright & Simmons, Frank Finn, Jr., Dallas, for appellant.

Dawson & Dawson, Corsicana, for appellee.

WILSON, Justice.

Plaintiff sustained personal injuries when gasoline, with which he was cleaning oil sprayed on his employer's equipment by defendant, ignited. In this action he recovered judgment from defendant based on jury findings that defendant's negligence in the manner of spraying oil on the equipment and failure to clean it proximately caused plaintiff's injuries; that the oily condition constituted such a threat to safety of persons coming on the premises and to the employer's property as to cause an ordinarily prudent person to attempt to alleviate the condition. The jury found plaintiff's use of gasoline in cleaning, in failing to remove all metallic objects from his person, and his conduct in other respects was not negligence; that he knew or should have known the danger incident to the cleaning, but did not voluntarily expose himself thereto.

Defendant's chief contentions are that (1) there is insufficient evidence, or none, to support application of the "rescue doctrine" relied on by plaintiff; (2) the evidence establishes as a matter of law that plaintiff voluntarily encountered a known risk, and that (3) he was guilty of contributory negligence as a matter of law; (4) that plaintiff's conduct was a new and intervening cause, and (5) defendant's conduct was not a proximate cause as a matter of law.

The relative significance of these problems, to our minds, is inverse to the numerical order of presentation. That which has caused most concern is whether the causation and foreseeability elements of proximate cause exist.

Plaintiff was production superintendent of an oil company, charged with responsibility for his employer's tank battery, oil treating plant and other equipment which the jury found was negligently sprayed by defendant with slick and flammable crude oil. There was evidence to show a quantity of about five barrels of oil was left on the ground of the premises in an area 30 feet long, and up to 15 feet wide; that it was sprayed on storage tanks, walkways, stairways, catwalks, a gas separator and butane tank; that workers, oil gatherers and others frequented the properties, some of them daily. Plaintiff conferred with defendant's employee promptly after the condition arose about cleaning it, but no agreement was made, and a wind made it inadvisable to clean the following day. Defendant not having cleaned the

oil the third day, plaintiff began the cleaning operation himself, using a flushing method with white gasoline—the method he described as being easiest, quickest and most complete; "the only thing that I have known of that will do the job." There is evidence that this is "the standard method" of cleaning in the oilfield. Defendant's employee who sprayed the oil testified the use of gasoline was "standard procedure" and is what he used in cleaning operations in the oilfield, and that "it is about the only thing that will cut oil loose". There was evidence to the contrary. The evidence showed the oil created an extremely dangerous condition as to slickness and fire hazard.

Defendant's employee testified that he recognized the hazard produced by the oil, and because of the hazardous condition involved he planned to clean it up; that he knew someone would have to do it; that he knew the person who cleaned it would probably use gasoline as the practical and most effective method in common use, and that there might be hazard in its use. The defendant's witnesses conceded one reason for cleaning off the oil was that the oil caused a slippery condition which increased possibility of injury. It is not argued that the condition was not hazardous.

In the course of the cleaning process, and after 1½ hours of work with the gasoline, plaintiff "suddenly found" himself "on fire", becoming "a human torch" and sustaining severe burns. The igniting cause is a matter of conjecture. Appellee suggests a ring on his finger, or the gasoline can, might have made a spark.

We conclude the record supports the jury finding as to existence of causation and foreseeability elements of proximate cause, and under the evidence we are unable to say plaintiff's conduct was a new, independent and intervening cause as a matter of law.

■ Determination of defendant's contention that plaintiff voluntarily encountered a known risk as a matter of law, or

whether as a matter of law recovery is precluded by contributory negligence appears to us to turn, ultimately, on the issue of whether plaintiff's use of gasoline was negligence as a matter of law, the jury having found it was not as a matter of fact. Plaintiff conceded he realized cleaning with gasoline was dangerous, "just like it is dangerous to put gasoline in your car if you don't use some reasonable caution," and that he used precautions. He cut off all flame in a heater treater (which he was cleaning when his body became ignited) over an hour before he began to clean it. He examined it to see that it was cool, and had nearly completed removing oil from it and was cleaning its gauges when the fire began. The jury finding that plaintiff did not clean the equipment when it was hot is not challenged. He admitted that in cleaning with gasoline "you run the risk that something will happen" as "I run a risk of it every time I drive into a service station to have gas put in my car."

If we assume that the evidence establishes without dispute that plaintiff encountered a condition of known danger fully appreciating it, there remains the question of whether he "voluntarily" encountered it. "It must be done 'of his own free will and as a result of an "intelligent choice." ' " McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391, 395. The jury found he did not voluntarily expose himself to the danger.

Do the jury findings that the oily condition constituted a threat to the safety of persons coming on the premises, and to property, at the time plaintiff attempted to clean it; that the threat was such as to cause a person of ordinary prudence to alleviate it; and that plaintiff was attempting to alleviate it when injured, negative free volition and the element of intelligent choice? Appellant says not, urging that there was neither present the factor of urgency or imminent danger, nor circumstances such as to induce a reasonable belief that someone was in peril, so as to authorize the attempted rescuer to act.

We do not consider it necessary to decide whether the "rescue doctrine" relied on by plaintiff is available in protection of property, for the evidence in this case seems to us to support a finding of threat to personal safety as fully as to property. Appellant does not contend defendant's negligence did not create a condition hazardous to those coming on the property, but insists that plaintiff was not actuated by spontaneous, instinctive or impulsive reaction to perception of the immediate actual or apparent peril of some person.

Both parties recognize the opinion of Justice Cardozo in Wagner v. International Ry. Co., 232 N.Y. 176, 133 N.E. 437, 19 A. L.R. 1, to be a leading pronouncement of the rescue doctrine. Of the contention he said: "The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man. The wrongdoer may not have foreseen the coming of a deliverer. He is accountable as if he had. [Citation.] The defendant says that we must stop, in following the chain of causes, when action ceases to be 'instinctive.' By this is meant, it seems, that rescue is at the peril of the rescuer, unless spontaneous and immediate. If there has been time to deliberate, if impulse has given way to judgment, one cause, it is said, has spent its force, and another has intervened. * * * We find no warrant for thus shortening the chain of jural causes." So sweeping an exception, if recognized, it was held, would leave little to the rule. "The law does not discriminate between the rescuer oblivious of peril and the one who counts the cost. It is enough that the act, whether impulsive or deliberate, is the child of the occasion."

The predominant and determinative component of the doctrine in the present case, to our minds, is not "imminence" of peril or urgency in the sense of mental compulsion; it is (a) whether a reasonable necessity exists or appears to justify undergoing the risk, and (b) whether the effort made to avert the threatened danger created by defendant is reasonable. This is the test adopted by American Law Inst., IV Restatement, Torts, Sec. 893, which contains the comment that where defendant creates and maintains a dangerous condition after notice, "the fact that the plaintiff chooses to subject himself to a known risk does not necessarily bar him from recovery" and if he sees a third person has been endangered thereby he may recover for harm resulting from his effort to avert the danger "despite his full realization of the risk he runs in so doing", if he does not adopt a course of conduct which a reasonably prudent person would not adopt. id. p. 496. "It is not contributory negligence for a plaintiff to expose himself to danger in a reasonable effort to save a third person" from harm. II Id. Sec. 472. See 3 Cooley, Torts, Sec. 487; Prosser, Torts (2d ed. 1955) Sec. 55, p. 313.

The controlling test is summarized in II Restatement, Torts, Sec. 466, p. 1231: Intentional exposure to danger, to constitute contributory negligence, "must be unreasonable. In order that it may be unreasonable it is necessary that a reasonable man in his position would not expose himself to it. This in turn depends upon the comparison between the quantum of danger, including both the probability of harm and its gravity, which plaintiff realizes or has reason to realize as involved in the condition created by the defendant, with the value which the law attaches to the advantage which will be lost if the danger is not encountered."

We reject the concept argued for, that the hazard to third persons must be more "imminent" than the evidence here shows. We think the issue as to whether the effort made by plaintiff and the means used to avert the danger was that of a person of ordinary prudence under the circumstances, was a fact issue for the jury, and the negative was not established as a matter of law. We have considered appellant's other points, and they do not reflect reversible error. Affirmed.