The **TEXAS AND PACIFIC RAILWAY COMPANY, Appellant,**

v.

**Jewell HOYLE, Appellee.**

No. 5897.

Court of Civil Appeals of Texas.

El Paso.

Oct. 18, 1967.

Rehearing Denied Nov. 29, 1967.

--------◆--------

Mays, Leonard, Moore & Dickson, George W. Leonard, Jr., Sweetwater, Stubbeman, McRae, Sealy & Laughlin, Harrell Feldt, Midland, for appellant.

William B. Smith, Midland, for appellee.

## OPINION

FRASER, Chief Justice.

On November 15, 1964 a Texas and Pacific Railway train collided with an automobile that was on the train track and knocked the automobile into and over the driver of the automobile, plaintiff-appellee Jewell Hoyle. He was trying to escape from the automobile as the train hit it. It is alleged that one Inez Baker, a woman of some 30 years of age, had been crossing at this point when her car stalled. In order to understand the background of this incident, it is well to point out that Lee Street, in Midland, Texas, intersects both the railroad and Highway 80 going to Odessa. This accident happened at the Lee Street crossing in Midland. Inez Baker, in coming from the southerly side, had to first cross the railroad tracks at Lee Street in order to get on Highway 80, where it was her intention to make a left turn and proceed to the City of Odessa, some miles farther west. It seems to be agreed that this is a very busy crossing, and it is not controverted that the railroad had flashing red warning lights installed and that they appeared to be in proper working order and flashing at the time of the accident. According to the evidence, there is a stop and go sign just north of the railroad tracks, and that as Inez Baker, who had eight children from three months to 17 years of age in her car, was proceeding over the railroad tracks, the light had apparently changed and the line of traffic had stopped. It is her testimony that her car stalled on the tracks and, as she said "shortened out" or something to that effect. In any event, she could not move her car. There is some evidence that either a little boy or little girl went to a nearby filling station, but the man there said he was alone and couldn't come and help. At the time the Baker car stalled there was no train in sight, and it is her testimony and that of others that when they looked up and saw the light and heard the noise of the onrushing train they were just simply frightened. Her testimony was: "A. Yes. We was just sitting there. We couldn't get out; we was scared and froze to the seats." There was testimony that the Baker car was on the tracks in a stalled condition some five or six minutes before the accident, and some time before the railroad warning lights began flashing. Mrs. Baker then testified that a car hit her car from the rear, pushing it off the track, and then the train hit the car that had been pushing hers.

It is appellee's testimony that his car stalled when he bumped the Baker car, with the eight children in it, off the track and that he tried twice to start the motor of his car and back off into a position of safety, but the motor wouldn't start, and he then tried to leap to safety, but it was too late. Three witnesses testified to the emergency situation and that appellee pushed the Baker car off the railroad track.

There was testimony from a Max Schumann that he had surveyed the area for a mile on each side of the Lee Street crossing,

and that it is about 3,866 feet from the Lee Street crossing back east to the stock loading pens, and that the fairground road is approximately 5,250 feet east of the Lee Street crossing, and that the CJM Packing House was still farther east of the fairground road. At the time of the accident the train was approaching the Lee Street crossing from the east, going in a westerly direction. Mr. Schumann further testified that an object moving 40 miles per hour would travel 58 feet in one second. The fireman, one A. J. McClinton, who was in the locomotive at the time of the accident, testified that the seats occupied by the engineer and himself are 12 to 14 feet above the track level; that the Lee Street intersection is a busy one; that the terrain at Lee Street crossing and the area is level, and the track is straight, and that from the engine of the train you can see automobiles on both sides of the tracks at the Lee Street crossing from as far back as the stock pens; that as far back from the Lee Street crossing as the CJM packing company, from the engine one can see when something is on the tracks at the Lee Street intersection. That on the occasion in question he saw cars on each side of the track at the Lee Street intersection from as far back as the stock pens. It will be remembered that the stock pens were some 3,866 feet away from the intersection of Lee Street and the railroad.

J. H. Johnson, the engineer operating the train for appellant, testified that he had been over the Lee Street crossing many times; that it was a busy intersection and that they were running late. The evidence does not indicate that there is any obstruction to vision from this crossing for at least a mile easterly down to the stock pens, etc. In other words, from the Lee Street crossing the track ran level and unobstructed for at least a mile east of there. Taking all of the evidence into consideration, it seems that one operating a locomotive could see objects on the track at the Lee Street crossing from as far away as one mile. It should be pointed out that the fireman and the engineer deny that there was a car (presumably the Baker car) stalled on the crossing; that the only car they ever saw on the track was that of the appellee, and that they were then 250 to 350 feet away when he drove up on the track and stalled. There was, of course, testimony as to the total destruction of the automobile and the injuries sustained and expenses incurred by appellee.

Appellant, in its brief, states that this is not a case of discovered peril, but a case of imminent peril involving the "rescue" doctrine.

We think it well now to make a general review of the issues submitted to and answered by the jury. The jury found as follows: That the engineer was not operating the train in excess of 40 miles per hour within the city limits of Midland; that he was not operating such train at a speed in excess of ordinary care; that the engineer, J. H. Johnson, failed to keep a proper lookout and that such was a proximate cause of the accident; that prior to the collision plaintiff was in a position of peril; that the engineer did not discover the peril of Jewell Hoyle within such time and distance that, by the exercise of ordinary care, he could have avoided the collision. That plaintiff Jewell Hoyle, using his own car, pushed or knocked the vehicle operated by Inez Baker from the railroad track prior to the collision in question; that immediately prior thereto Inez Baker and the occupants of her car were in a position of peril; that plaintiff was acting to rescue Inez Baker and her passengers from a position of peril when he knocked or pushed her car from the railroad tracks. Then follow issues as to damages to the person and automobile of plaintiff. Then the following issues occur: That a clearly visible electric or mechanical signal device was giving warning of the immediate approach of the train at the time plaintiff approached the crossing in question; that the train of the Texas & Pacific Railway Company was plainly visible and in hazardous proximity to such crossing. That within 1500 feet of the

crossing, the train emitted a signal audible from such distance, and such train, by reason of its nearness to such crossing, was an immediate hazard; that plaintiff stopped his automobile within 50 feet, but not less than 15 feet, from the nearest rail of the track upon which the train was approaching. That after having so stopped, he proceeded when he could not do so safely, and that such action was a proximate cause of the collision. That it was negligence for plaintiff Hoyle to drive his automobile on the track in front of the approaching train, and that such was a proximate cause of the collision in question. That plaintiff did not attempt to proceed over the crossing when he could not safely do so; that the train emitted an audible signal as it approached the crossing; that plaintiff failed to heed the audible signal; that such failure was negligence and that such negligence was a proximate cause. That a visible electric or mechanical signal was giving warning of the immediate approach of the train as the train approached the crossing; that plaintiff failed to heed such electric or mechanical signal; that such was negligence; that such negligence was a proximate cause of the collision; that plaintiff failed to get out of his motor vehicle as soon as its motor stopped running on the railroad crossing; that such failure was negligence and that such negligence was a proximate cause of the accident. That plaintiff left a place of safety and went to a place of danger on the railroad crossing; that such was negligence and that such negligence was a proximate cause of the collision. That plaintiff did not drive his automobile on to the railroad crossing without making any stop whatsoever as he approached it; that the plaintiff, Jewell Hoyle, did not attempt to beat the train over the crossing; and that the plaintiff did not act in a rash and reckless manner on the occasion in question.

The jury further found that appellee Hoyle had full knowledge that the train was approaching the railroad crossing when he drove his automobile on to the crossing; that he fully appreciated the danger of driving his automobile on to the railroad crossing ahead of the approaching train; that he voluntarily assumed the risk of so doing; and lastly, that the collision was not the result of an unavoidable accident. In summation, we should like to point out that there was a sharp conflict between the testimony of the witnesses for plaintiff-appellee and the operators of defendant's train. The jury resolved that conflict in favor of plaintiff, finding that defendant-appellant had failed to keep a proper lookout and that such was a proximate cause of the accident. Although the jury convicted plaintiff of a number of acts of contributory negligence, they specifically found that, at the time, he was in the act of rescuing Inez Baker and the occupants of her car from a position of imminent peril, and that in so doing he did not act in a rash and reckless manner.

■ In appellant's first point, it takes the position that there was no evidence of probative force to support the jury's finding that the appellant's engineer, J. H. Johnson, failed to keep a proper lookout; and in its second point maintains there was no evidence of probative force to support the jury's finding that such failure was a proximate cause of the appellee's injuries. In Point 4 appellant charges that the evidence was insufficient to support the finding that the appellant's engineer failed to keep a proper lookout; and in its fifth point maintains that the evidence is insufficient to support the jury's finding that such failure, if any, on the part of the engineer was a proximate cause of appellant's injuries. Appellant's sixth and seventh points are to the effect that the jury's finding that appellant's engineer, J. H. Johnson, failed to keep a proper lookout and that such was a proximate cause of appellee's injuries, are so contrary to the great weight and preponderance of the evidence as to be clearly wrong. We feel these points must be overruled.

■ As stated earlier in this opinion, the scene of the collision was an admittedly busy crossing in the City of Midland, Texas. The train of defendant-appellant,

according to witnesses, had a clear, level view of at least a mile before reaching the crossing; that the car of Inez Baker had been stalled on the tracks for five or six minutes. The record shows that there was testimony that the highway stop and go, red and green light, changed five or six times while Inez Baker was parked on the track, and testimony that it took about a minute for each change; further there was testimony to the effect that the train operators themselves said that they saw cars on either side of the track. The jury found the train was proceeding at only 40 miles an hour, and there was evidence that there was nothing to obstruct the view of the train operators for at least a mile easterly from the scene of the accident (the direction from which the train was approaching). There is no evidence of fog, rain or any impairment to visibility, nor is such alleged, and Inez Baker and other witnesses testified that while the car was on the tracks an effort was made to get someone to move it; that at the time the car first stalled, and for some little time thereafter, there was no evidence of any train approaching; and finally, Inez Baker testified that when they did look up and see the train approaching with the lights flashing, etc., they were too frightened to move. She had previously testified that she was stopped on the train tracks by a change of the highway signal ahead of her stopping the flow of traffic, and that her car "shortened out or something" and she was unable to get it off the tracks. Several witnesses testified to the Baker car being on the tracks for some little time, one of them being the filling station employee close by. It seems inescapable, therefore, that the jury had ample evidence to find that a train, having a mile or more of unobstructed vision, knowing it was approaching a busy crossing, and operating at a speed of no more than 40 miles an hour, could have stopped in plenty of time had a proper lookout been kept by either or both of the train operators, and that such findings are not so contrary to the great weight and preponderance of the evidence as to be clearly wrong. The

same reasoning applies, of course, to appellant's sixth and seventh points wherein appellant claims that the jury's finding that Mr. Johnson, the appellant's engineer, failed to keep a proper lookout and that such was a proximate cause of plaintiff-appellee's injuries, was so against the great weight and preponderance of the evidence as to be clearly wrong.

■ Of course this is a situation where there is a sharp conflict in evidence, with the train operators maintaining that there was no car on the track as they observed the crossing from a mile back, but that as they approached to within about 100 yards of the crossing plaintiff-appellee drove up on to the track and was hit. It should be remembered here that there was a specific finding by the jury to the effect that plaintiff-appellee was not trying to beat the train to the crossing. Therefore, with interested and disinterested witnesses testifying that plaintiff-appellee bumped or knocked the Inez Baker car off of the train track after the Baker car had remained there for several minutes, it seems clear to us that appellant's Points 1, 2, 4, 5, 6 and 7 must be, and are, overruled. After all, it must be remembered that the law requires train operators, under conditions similar to those existing at the time of this accident, to keep not just a lookout, but a *proper* lookout. A proper lookout would have revealed the Baker car on the tracks, and the pushing and knocking of the car off the tracks by plaintiff-appellee, all of which the train operators deny having seen. The jury specifically found that the Baker car was on the track while the train was approaching, until impact with the Hoyle car. We are cited to textbook authorities, including Volume 48 Tex.Jur.2d, Railroads, §§ 282, 283; and §§ 461–463, to the effect that it is the basic duty or care in the operation of trains that a lookout should be kept by trainmen from the cab of the locomotive, when approaching a crossing, and that it is the settled law of the State that a railway company in operating its trains owes a general duty of keeping a lookout for per-

sons as well as animals and inanimate objects on its track. The jury specifically held that the operators of the railroad company train did not keep a proper lookout prior to the collision; that immediately prior to the collision the Baker car was in a position of imminent peril until bumped off the track by plaintiff-appellee and, as we have stated, there is ample evidence in the record to show that the Baker car had been stalled on the train track for at least five minutes before the collision.

Appellant, in its third point, maintains that the trial court erred in rendering judgment for appellee because he had been found contributorily negligent in five respects, each of which was a proximate cause of the collision, and that appellee did not obtain the necessary jury findings on the essential elements of the rescue doctrine. We think this point must also be overruled. By way of review let it be said that there was ample evidence that, during the several minutes the Baker car was on the railroad track, they were not in any peril or danger because no train was in sight or hearing; but as the train approached, then Inez Baker and her eight passengers were in great and imminent peril and so frightened that they could not get out of the car and, as was testified, could see and almost feel the train upon them. Under these conditions appellee pushed or knocked the Baker vehicle off of the tracks in order to rescue them and was injured in so doing. It is in evidence that immediately after the accident, appellee, although grievously injured, muttered the words that he could not stand to see those little kids killed by the train. Then, too, all of the testimony and facts hereinabove related applying to the clear visibility of over a mile must be kept in mind. The jury did find plaintiff-appellee guilty of some five acts of contributory negligence, but in Issues 11, 12, 13 and 47, the jury specifically found that he pushed or knocked the Baker vehicle off the railroad track prior to the collision at a time when the occupants of the Baker car were in a position of peril, and that plaintiff-appellee was acting to rescue Inez Baker and the occupants of her car when he bumped the Baker automobile off the track; and, lastly, the jury found that plaintiff-appellee did not act in a rash and reckless manner on the occasion in question. We think the elements of the rescue doctrine were properly submitted and adequately supported by evidence of probative force. As stated in Panhandle & S. F. Ry. Co. v. Haywood, 227 S.W. 347 (Tex.Civ.App., 1921): "Where one acts to save another from imminent peril brought about by the negligence of the defendant, the rule of ordinary care is not applied to his act, but he is only precluded from recovery if he acted rashly under the circumstances." (And cases therein cited.) It is worth noting that it is in evidence that this was a comparatively light or small train of cars, to-wit, one diesel unit and seven passenger cars. As stated by our Supreme Court in Goolsbee v. Texas & N. O. R. Co., 150 Tex. 528, 243 S.W.2d 386 (1951):

"* * * The doctrine of imminent peril is one which may be invoked to relieve a party of the consequences of his conduct, which otherwise would be held negligent. It is most often invoked as a defense to a charge of contributory negligence. International & G. N. R. R. Co. v. Neff, 87 Tex. 303, 28 S.W. 283; Jackson v. Galveston, H. & S. A. Ry. Co., 90 Tex. 372, 38 S.W. 745; Fort Worth & D. C. Ry. Co. v. Kimbrow, 131 Tex. 117, 112 S.W.2d 712; Foster v. Woodward, Tex.Civ.App., 134 S.W.2d 417, error refused. But it properly may be invoked as a defense to a charge of primary negligence. Dallas Ry. & Terminal Co. v. Young, Tex.Civ.App., 155 S.W.2d 414, error refused; Schroeder v. Rainboldt, 128 Tex. 269, 97 S.W.2d 679, 684 (approval of lower court's holding permitting submission of issues on defendant's sudden emergency.) In either instance it is invoked to lower the legal standard of care which a party must exercise to the point where conduct which otherwise

might be regarded as negligent or contributorily negligent is not so regarded."

See also Swift & Company v. Baldwin, Tex. Civ.App., 299 S.W.2d 157 (n. w. h.) ; Keystone-Fleming Transport Inc. v. City of Tahoka, Tex.Civ.App., 315 S.W.2d 656 (ref., n. r. e.) ; Shultz v. Dallas Power and Light Co., Tex.Civ.App., 147 S.W.2d 914 (dism., judg. cor.). This last case again points out that one undertaking to rescue another from a perilous situation created by another can recover despite his own contributory negligence; but not so if his actions be rash or reckless. Again we point out that the jury specifically found that plaintiff-appellee did not act in a rash and reckless manner on the occasion in question. Next, it must be noted that in Issues 5 and 6, the jury specifically found that J. H. Johnson, on the occasion in question, failed to keep a proper lookout, and that such was a proximate cause of the injuries to plaintiff-appellee. In Issue 11 the jury found that plaintiff-appellee pushed or knocked the vehicle operated by Inez Baker from the railroad track prior to the collision in question; and in answer to Special Issue No. 12 the jury found that Inez Baker and the occupants of her car were in a position of peril immediately prior to the time plaintiff-appellee knocked or pushed the Baker car from the railroad tracks. In summation of this point, we should like to repeat that at the moment the Inez Baker car stalled, and for some time thereafter, her car was not in a position of imminent peril because, according to the evidence, there was no train approaching on the track. The perilous position of Inez Baker and the occupants of her car was caused by the approach and negligent operation of the defendant's train. Appellant's third point is overruled.

■ In its eighth point appellant contends that appellee, at most, was entitled to recover for the property damage, if any, because the jury found him negligent in failing to alight from his automobile as soon as the motor stalled on the railroad crossing, and such was found to be a proximate cause of his personal injuries. Without reviewing the entire incident, we believe this point must also be overruled. There were four witnesses, including the appellee, who testified that the Baker car was about to be struck by the train when appellee pushed it from the track. It must be remembered, too, that the engineer maintains that he first saw plaintiff-appellee when the train was from 250 to 350 feet away and approaching at a speed of 40 miles an hour. Although it is not made an issue nor brought out in the evidence, we cannot avoid the fact that appellee was on the driver's side of the car, going north, and that the train hit the car on the passenger side and propelled the car over and upon appellee. We think the elements of the rescue doctrine and imminent peril are equally applicable to the situation of plaintiff-appellee, plus the fact that he apparently made one or two frantic attempts to start his motor, and then jumped. It would be equally tenable to hold him negligent for jumping without trying to remove his car from the tracks, and appellant would likely have charged him with negligence in not trying to remove his car. We do not intend to be argumentative, but this plaintiff-appellee was in a position of imminent peril and fright, and we think any negligence that the jury found chargeable to him is canceled by the "rescue" doctrine. Finally, it must again be remembered and noted that in Issue 47 the jury specifically found that he did not act in a rash and reckless manner. With all this in mind, it would be a strange decision that absolved appellee of negligence in pushing the Baker car off the track and at the same time held him negligent under the same extreme and emergency circumstances for not freeing himself from his own vehicle in time. Therefore we do not find merit in appellant's eighth point and hold that the same should be overruled.

■ Appellant's ninth point charges the court with error in rendering judgment

for appellee's medical expenses because there was no finding by the jury thereon. We feel this point must be overruled. Appellant did not put on any evidence with regard to this matter, and there was a difference of opinion only between the hospital and the doctor and appellee as to how much he, the plaintiff-appellee, had spent with the doctor and the hospital. We consider this an uncontroverted matter under Rule 272, Texas Rules of Civil Procedure. The record shows that the doctor and hospital claim that he had been charged less than the amounts to which he had testified. The court granted judgment in the smallest amounts—in other words, the amounts as testified to without contradiction by the hospital and the doctor. We do not believe this situation meets the test of a controverted issue, and it amounted to nothing more than a disagreement or misunderstanding between the patient (plaintiff-appellee) and the doctor and hospital. Finally, we do not see how appellant can claim any harm here or injury, because the court awarded the lowest amount testified to. This, in our opinion, would preclude the existence of any harm by not having submitted the matter in an issue. All parties apparently agreed that plaintiff-appellee had spent at least the amount allowed by the court for hospital and doctor bills.

In summation, it seems clear that the Baker car got into this position of imminent peril due to the fact that the engineer and fireman operating appellant's train failed to keep a proper lookout, and the plaintiff-appellee rescued the car and its occupants in the manner described. We believe that the acts of negligence found by the jury against the plaintiff-appellee are excused and canceled under the "rescue" doctrine. He was a man who acted in a sudden emergency and—according to the jury—in an effort to rescue some people, but did not perform the rescue in a rash or reckless manner; and it is our belief that there is adequate evidence to support the jury's findings with respect thereto. We will

not deal further with our disposition of Points 8 and 9.

Accordingly, therefore, appellant's points are all overruled and the decision of the trial court is affirmed.