**BELL CAB COMPANY, Inc., Appellant,**

v.

**Ascencion Gomez VASQUEZ et al., Appellees.**

No. 14694.

Court of Civil Appeals of Texas.

San Antonio.

Oct. 16, 1968.

Rehearing Denied Nov. 27, 1968.

Hubert W. Green, Jr., San Antonio, for appellant.

Frank R. Southers, Southers, Mendelsohn, Goldberg & Lyons, San Antonio, for appellees.

BARROW, Chief Justice.

This appeal relates primarily to the application of the humanitarianism or rescue doctrine. A judgment non obstante veredicto was entered whereby appellee Edward Vasquez recovered damages from appellant in the sum of $3,170, individually, for his medical expenses and loss of contributions, and in the sum of $25,000 as next friend for his nineteen-year-old son, Ascencion Gomez Vasquez, who was struck by one of appellant's taxicabs which was being operated by Daniel Vera Auces in the scope of his employment.

The accident was the result of a somewhat bizarre set of facts. About 2:00 a.m. on May 20, 1966, Ascencion was driving a 1956 Chevrolet sedan enroute to his work for a wholesale distributor of newspapers. A white car passed him at a high rate of speed as he proceeded north on 21st Street near the intersection of Durango Street in the City of San Antonio. Twenty-first Street ends at Durango Street, and as he neared this "T" intersection, he noticed that a white car had run into a utility pole and the front end was extended in the air against the pole at an angle with the headlights still burning. He also noticed several people running from the car to the west on Durango Street. He turned his car to the west on Durango Street and shortly thereafter saw the body of a girl lying in the eastbound lane of Durango Street. He stopped his car in the westbound lane near her body and went to her assistance. He left the headlights of his car burning on the bright (upper) beam. Shortly after he got to the girl, he heard a car, which turned out to be appellant's taxicab, turn onto Durango from 24th Street and proceed east towards him. He stood over the girl and tried to attract the attention of the operator of the approaching car by waving his arms and shouting. When he realized the car would not stop, he tried to jump on the hood. The taxicab struck his left leg resulting in a bad fracture of same near the knee.

Auces testified that he was proceeding east on Durango Street about 25 m.p.h., accompanied by a passenger. He saw the car stopped with the bright headlights facing him, but did not see the boy until just before the impact when the boy appeared to jump in front of his taxicab. He applied the brakes and came to a stop about a length and a half beyond the boy's car. This testimony was substantially supported by the testimony of the passenger, Vicinte G. Gutierrez, although he noticed the wrecked car east of the stopped car. Shortly after the taxicab stopped, Josephine Valdez, the girl lying in the street and apparently run over by the taxicab, was helped to her feet by a girl friend who returned to the scene after the accident and both girls fled to the west. Police officers arrived in a few minutes and Ascencion was taken to the hospital by ambulance. The two girls who had fled were apprehended and returned to the scene by the police.

Measurements show that Durango Street is 27 feet wide and, although there is only one block on Durango between 21st and 24th Streets, this block is over 1300 feet long. The boy was struck approximately 250 feet west of 21st Street. This area is very dark, in that there is only one street light between these two intersections. This was particularly so on this night, as it was very cloudy with spotted light rain falling in the area.

Although liability was vigorously contested at the trial, there is no complaint on this appeal of the jury findings of primary negligence proximately causing the accident by the failure of Auces to keep a proper lookout, to properly apply the taxicab's brakes, and by operating at an excessive rate of speed under the circumstances. Appellant urges, however, that it was entitled to a take-nothing judgment based on the jury's findings that Ascencion was contributorily negligent proximately causing the accident in failing to move to one side in time to avoid being hit by the cab. There is sufficient evidence to support these findings from the testimony of Ascencion alone. However, the trial court entered judgment for appellee based on the jury findings that immediately before Ascencion was struck by the taxicab the girl was in a position of imminent peril by the approaching taxicab, and that Ascencion attempted to rescue her from this position of peril by waving his hands and shouting. Further, in attempting to rescue the girl, Ascencion acted as an ordinarily prudent person would have acted under the same or similar circumstances.

In addition to a point seeking judgment under the findings of contributory negligence, appellant urges that there is no evidence or, in the alternative, the evidence is insufficient to support the finding that Ascencion acted as an ordinarily prudent person in attempting the rescue. In any event, it urges that such finding is in conflict with the finding of contributory negligence. It also asserts that there is no pleading or proper finding to support the rescue doctrine, and that one of the issues supporting same was duplicitous and constitutes a comment on the weight of the evidence. It presents two points complaining of testimony erroneously admitted in one instance and refused in another. It also urges that the finding of $24,000 for loss of earning capacity of Ascencion after he reaches twenty-one years of age is excessive.

█ The rescue doctrine is a recognition of the noble impulse that impels a man to deeds of heroism by rushing into danger to aid his fellow man. As Justice Cardozo stated in the landmark case of Wagner v. International Ry. Co., 232 N. Y. 176, 133 N.E. 437, 19 A.L.R. 1 (1921): "Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences." Thus, as a general rule, "one who sees a person in imminent and serious peril through the negligence of another cannot be charged with contributory negligence, as a matter of law, in risking his own life, or serious injury, in attempting to effect a rescue, provided the attempt is not rashly or recklessly made." Annotation 158 A.L.R. 190; Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368, 379 (Tex.Sup. 1963); Kelley v. Alexander, 392 S.W.2d 790 (Tex.Civ.App., San Antonio 1965, writ ref'd n.r.e.).

█ Appellees invoked the rescue doctrine by their allegation, which was not excepted to, that Ascencion stopped to render assistance and to rescue the person lying in the street, and while doing so was struck by the taxicab. Appellant urges, however, that the rescue doctrine has no application here in that it had nothing to do with the girl lying in the street, although certainly its taxicab approaching in the lane of traffic in which the girl was lying, placed her in peril. The general rule which is stated above includes a requirement that the peril is brought about through the negligence of the defendant. This requirement is probably based on the proposition that under our tort system the liability of the defendant is usually predicated upon fault. This may be established, however, by his negligence in causing the perilous situation of the one sought to be rescued, or toward the rescuer after he had begun his attempt to rescue. Restatement of the Law of Torts, Second, § 472, Comment b; 38 Am.Jur., Negligence, § 229; Annotation 158 A.L.R. 189, 195, Liability for death of, or injury to, one seeking to rescue another, § d. Negligence of defendant.

█ It must be kept in mind, however, that there is no jury finding that appellant's negligent conduct created the imminent peril of the girl, nor can such a finding be implied by the absence of such an issue in view of appellant's objection to the court's charge for failure to submit such an issue. Rule 279, Texas Rules of Civil Procedure, Therefore, cases based upon the 'imminent peril" doctrine have no application in that the key to such a doctrine is that the defendant's negligent act created the apparent peril which in turn gave birth to plaintiff's conduct and injury in an attempt to escape from that apparent peril. See International & G. N. R. Co. v. Neff, 87 Tex. 303, 28 S.W. 283 (1894); Thode, Imminent Peril and Emergency in Texas, 40 Tex.Law Rev. 441, 443, 447.

The principal question to be determined on this appeal is the standard of care to be exercised by Ascencion during his rescue attempt, and more particularly the application of the jury verdict to this standard. Obviously, if society is to encourage rescue attempts, it must recognize that a

reasonably prudent person will take greater risks to effectuate a rescue and often must act under great stress. Therefore, the legal standard of care which a party is required to exercise during a rescue attempt must be lowered. Such words as "rash", "reckless," "wanton," and "imprudent" have been used by our courts in limiting a rescuer's right to intentionally assume danger or in exposing himself to a known risk. See Panhandle & S.F. Ry. Co. v. Haywood, 227 S.W. 347 (Tex.Civ. App., Amarillo 1921, writ ref'd); Reddick v. Longacre, 228 S.W.2d 264 (Tex. Civ.App., Fort Worth 1950, writ ref'd n.r.e.); Longacre v. Reddick, 215 S.W.2d 404 (Tex.Civ.App., Fort Worth 1948, mandamus overruled); International & G.N. R. Co. v. McVey, 81 S.W. 991 (Tex.Civ. App.1904, no writ).

On the other hand, other authorities lower the standard of care by requiring the rescuer to exercise the standard of conduct of any ordinary prudent person under the peculiar circumstances brought about by the rescue attempt. Halepeska v. Callihan Interests, Inc., supra; Southwestern Hydrocarbon Co. v. Thompson, 355 S.W.2d 823 (Tex.Civ.App., Waco 1962, writ ref'd n.r.e.); Prosser, Law of Torts, 3d Ed., § 51, p. 317; Restatement of the Law of Torts, Second, § 472, Comment c.

■ It is seen that whether differing degrees of care and caution are submitted or appropriate instructions given, the jury should understand that a rescuer's standard of conduct is determined in the perspective of the specific factual circumstances facing the rescuer on this occasion.

Here the standard of conduct of an ordinary prudent man under the same or similar circumstances was submitted without objection by appellees.[1] There was no specific instruction or issue given for the jury to apply a lower standard of care while Ascencion was engaged in his res-

cue attempt. It cannot be said that the jury was given or that appellees requested issues or instructions involving a lesser degree of care such as "rash" or "reckless." In the trial court, appellees willingly accepted the standard of ordinary prudent person. Appellees urge, however, that the jury finding to the effect that in attempting to rescue the girl from a position of imminent peril, Ascencion acted as an ordinary prudent person would have acted under the same or similar circumstances has the legal effect of cancelling or excusing the prior finding of contributory negligence. In support thereof, they cite, Texas & Pacific Ry. Co. v. Hoyle, 421 S.W.2d 442 (Tex.Civ.App., El Paso 1967, writ ref'd n.r.e.).

In *Hoyle* a finding that the plaintiff did not act in a rash or reckless manner on the occasion in question excused or cancelled other jury findings that plaintiff had not acted as an ordinary prudent person. The basis for this holding is not clear, in that the Court discussed without distinction the "imminent peril," "sudden emergency" and "rescue" doctrines, and there were findings that plaintiff as well as the third parties were in imminent peril. In support of its holding, the Court cited: Goolsbee v. Texas & N.O. R. Co., 150 Tex. 528, 243 S.W.2d 386 (1951); and Panhandle & S.F. Ry. Co. v. Haywood, supra. In each of these cases the jury found that the plaintiff was not contributorily negligent and, furthermore, *Goolsbee* is an imminent peril or emergency case. These doctrines are keyed to a finding that defendant's negligent conduct created the peril or emergency. See Thode, supra, 460. There was no such finding in our case, and we have found no authority that a jury finding that a party is engaged in a rescue attempt does away with his common-law duty to exercise at least some care for his own safety.

■ Here the same standard of conduct was submitted, without objection by

---

1. Appellant objected to the rescue series of special issues for failure to inquire if Ascencion's conduct was rash, reckless or imprudent.

appellees, in the issues relating to Ascencion's rescue attempt and his contributory negligence. Each inquired as to the care exercised by an ordinary prudent person under the same or similar circumstances. In Issue No. 11 the jury found that Ascencion failed to exercise such care in failing to move to one side in time to avoid being hit by the taxicab. In Issue No. 24, as conditionally submitted, the jury found, in effect, that Ascencion by waving his hands and shouting in an attempt to rescue the girl from a position of imminent peril, exercised proper care immediately before he was struck. Such findings have reference to his conduct on the same occasion and are in irreconcilable conflict. Furthermore, an application of the "judgment test" as set forth in Little Rock Furniture Manufacturing Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985 (1949), demonstrates that said conflict is fatal. Under Issue No. 11, together with the proximate cause finding, the appellant is entitled to a take-nothing judgment based on the contributory negligence of Ascencion. On the other hand, under Issue No. 24, the jury found that Ascencion exercised the care of an ordinary prudent person under the same or similar circumstances and therefore was not contributorily negligent.

◼ Appellant urges that the specific finding of contributory negligence should control the general finding of proper care. Such exception is not applicable here, in that the general finding of proper care necessarily included the specific finding of negligence. In a comparable situation, a finding of unavoidable accident and primary negligence is uniformly held to be a fatal conflict. Bradford v. Arhelger, 161 Tex. 427, 340 S.W.2d 772 (1960).

The judgment of the trial court must be reversed and the cause remanded because of this irreconcilable conflict in the jury verdict. Appellant's other points which would require a remand of the cause are not likely to recur, at least not in the same manner, and therefore nothing would be gained by a consideration of them.

The judgment of the trial court is reversed and the cause remanded.

CADENA, Justice (dissenting).

I cannot agree that a plaintiff who is attempting to rescue a third person from imminent danger and who is injured by the negligent conduct of defendant should be denied recovery because, in the rescue attempt, he failed to show that concern for his own safety which, presumably, would have characterized the conduct of that mythical creature, the man of ordinary prudence.

The rescue doctrine came to fine flower in the leaping language of Judge Cardozo in Wagner v. International Ry. Co., 232 N.Y. 176, 133 N.E. 437, 19 A.L.R. 1 (1921). That brilliant opinion rejects that dark and dismal view of human nature which insists that a bystander has no legitimate interest in attempting the rescue of those imminently imperiled.

One of the earliest Texas cases involving a rescue situation is San Antonio & A. P. Ry. Co. v. Gray, 95 Tex. 424, 67 S.W. 763 (1902). The opinion sheds little light on the problem, since the jury's verdict in favor of plaintiff was based on a general charge which made the absence of contributory negligence a prerequisite to recovery. But the Supreme Court pointed out that a plaintiff's act of exposing himself to danger for the purpose of saving the life of another does not "lay him liable to the charge of contributory negligence." 67 S.W. at 764. Much stronger language is found in Missouri, K. & T. Ry. Co. of Texas v. Goss, 31 Tex.Civ.App. 300, 72 S.W. 94, 96 (Tex.Civ. App., Dallas 1903, writ ref'd): " 'For a person engaged in his ordinary affairs, * * * knowingly and voluntarily to place himself in a position where he is liable to receive serious injury, is negligence which will preclude a recovery for an injury so received; but when the exposure is for the purpose of saving life it is not wrongful, and therefore not negligent, unless such as to be regarded

either *rash* or *reckless.'* * * * So, even if Goss knew that the engine was approaching,—and it is not clear that he did,—the question as to whether his going on the track was necessary, and was not *rash* or *reckless,* considering the reason for his action, was properly left to the jury, * * *." (Emphases added)

Similar dicta are found in Texas & N. O. R. Co. v. Scarborough, 104 S.W. 408 (Tex. Civ.App., San Antonio 1907, affirmed, 101 Tex. 436, 108 S.W. 804)[1]; Panhandle & S. F. Ry. Co. v. Haywood, 227 S.W. 347 (Tex. Civ.App., Amarillo 1921, writ ref'd)[2]; Shultz v. Dallas Power & Light Co., 147 S. W.2d 914, 916 (Tex.Civ.App., Dallas 1941, writ dism'd) ; and Keystone-Fleming Transport, Inc. v. City of Tahoka, 315 S.W.2d 656, 663 (Tex.Civ.App., Amarillo 1958, writ ref'd n. r. e.).

There is language in the Texas cases to the effect that a rescuer's right to relief is barred if he is guilty of what is sometimes called "ordinary negligence"; that is, he may not recover if, in his rescue attempt, he failed to adhere to the letter to that course of conduct which would have been followed by the man of ordinary prudence. See Kelley v. Alexander, 392 S.W.2d 790, 792 (Tex. Civ.App., San Antonio 1965, writ ref'd n. r. e.), which is not a rescue case, since, as pointed out in the opinion, no one was in a position of peril at the time that plaintiff acted; Reddick v. Longacre, 228 S.W.2d 264, 270 (Tex.Civ.App., Fort Worth 1950, writ ref'd n. r. e.), in which no Texas authority was cited in support of the statement that recovery was precluded if the rescuer acted in a "negligent manner"; Southwestern Hydrocarbon Co. v. Thompson, 355 S. W.2d 823, 826 (Tex.Civ.App., Waco 1962, writ ref'd n. r. e.) where the Court referred

with approval to the position taken by the American Law Institute [3]; and Swift & Co. v. Baldwin, 299 S.W.2d 157, 161 (Tex.Civ. App., Texarkana 1957, no writ), where defendant did not rely on contributory negligence as a defense but contended, instead, that plaintiff had assumed the risk because he acted rashly and recklessly as a matter of law. Goolsbee v. Texas & N. O. R. Co., 150 Tex. 528, 243 S.W.2d 386 (1951), referred to in the Baldwin opinion, in no way supports the statement by the Texarkana Court of Civil Appeals to the effect that when a person acts to save another from imminent danger the relevant question is one of determining whether a person of ordinary prudence would have attempted the rescue. Goolsbee is not a rescue case and, understandably, the Supreme Court there used no language referring to the rescue doctrine. Goolsbee merely applies the elementary rule which allows a non-negligent plaintiff to recover from a negligent defendant.

Apparently, the only two Texas cases where the Court specifically considered, in order to dispose of the case, whether a rescuer's recovery is barred by contributory negligence are International & G. N. R. Co. v. McVey, 81 S.W. 991, on rehearing, 83 S.W. 34 (Tex.Civ.App., Austin 1904, rev'd, other grounds, 99 Tex. 28, 87 S.W. 328), and Texas & Pacific Railway Co. v. Hoyle, 421 S.W.2d 442 (Tex.Civ.App., El Paso 1967, writ ref'd n. r. e.).

There can be no doubt that in McVey the Austin Court of Civil Appeals squarely held that a rescuer's contributory negligence would not bar recovery. There the trial court instructed the jury that if plaintiff was attempting to rescue lives when he was injured as a result of defendant's negligence,

---

1. This Court pointed out in Scarborough that a rescuer may recover "if he were not so reckless" in his rescue attempt "as to defeat recovery," and added that whether the conduct of the rescuer is to be deemed reckless is for the jury to decide. 104 S.W. at 410.

2. "Where one acts to save another from imminent peril brought about by the neg-

ligence of the defendant, *the rule of ordinary care is not applied to his act,* but he is only precluded from recovery if he acted rashly under the circumstances." 227 S.W. at 350–351 (emphasis added).

3. Restatement of Torts, § 466 (1938). See also Restatement 2d, Torts, § 472 (1965).

he was entitled to recover unless he was rash or reckless. The defendant objected to this portion of the charge, contending that the correct test is what a person of ordinary prudence would have done under similar circumstances. This theory was rejected as "not correct." 81 S.W. 998.

The judgment of the Court of Civil Appeals in McVey was reversed by the Supreme Court on the ground that the trial court gave an incorrect charge relating to the measure of damages. However, the Supreme Court said: "We are of opinion that the judgment should be reversed, and the cause remanded for error in the charge of the court as to the measure of damages; and, since the other questions were correctly disposed of in the able and elaborate opinion of Chief Justice Fisher, it would be a profitless task to state the case in full, or to discuss the questions of which a correct disposition has been made by the Court of Civil Appeals." 87 S.W. at 328.[4]

In Hoyle, although the jury found that plaintiff was guilty of some five acts of contributory negligence, it also found that he was injured while attemping to rescue imminently imperiled persons and that, in attempting such rescue, he did not act in a rash or reckless manner. A judgment in favor of the rescuer was affirmed, the El Paso Court of Civil Appeals saying that, since plaintiff had not acted rashly or reck-

lessly, the findings of contributory negligence would bar recovery. 421 S.W.2d at 447. Hoyle is apparently the only Texas case in which a defendant entered the appelate battleground armed with a jury finding to the effect that the rescuer failed to act as would have a person of ordinary prudence under similar circumstances.

It is true that in Hoyle we find an alternative ground for the decision, since the opinion also relies on the doctrine of imminent peril. 421 S.W.2d 447–448. No particular significance can be attached to the action of the Supreme Court in refusing the application for writ of error with the docket notation, "no reversible error," since defendant's assault on the action of the Court of Civils Appeals, insofar as relevant here, was limited to the complaint that the verdict contained no finding that the perilous position of the third party was caused by defendant's negligence and that, therefore, the verdict did not establish the facts calling for an application of the rescue doctrine.

This Court's attention has been called to no Texas case in which a rescuer was denied recovery because a jury found that he failed to exercise that degree of care which would have been exhibited by the man of ordinary prudence. Even if the precedental value of McVey and Hoyle be discounted, all that can be said is that the question

4. However, the Supreme Court did say that, at the time the writ of error was granted, the Court was inclined to believe that "the third special instruction" requested by defendant should have been given, and that if, as claimed by defendant, "it appeared by the uncontroverted evidence that Edward McVey * * * knew of the approach of defendant's train to the place of collision with the push car," the charge should have been given. 87 S.W. 329–330. A reading of the opinion of the Court of Civil Appeals contains nothing indicating the substance of "the third special instruction," nor does the Supreme Court cast any light on this question. The language of the Supreme Court to the effect that the charge should have been given if the uncontroverted evidence established that plaintiff knew of the approach of the train would indicate that the instruction in question was to the effect that the failure of the engineer to give a warning signal should not be regarded as negligence because McVey knew of the approach of the train. See the discussion by the Court of Civil Appeals of defendant's twenty-fourth assignment of error. 81 S.W. at 1001. The Court of Civil Appeals held, as did the Supreme Court, that this charge was properly refused because it assumed the fact that McVey knew the train was approaching. If this conjecture as to the nature of the defendant's requested special instruction No. 3 is correct, there is nothing in the Supreme Court opinion to weaken the comments of the Court of Civil Appeals concerning the proper standard to be applied in rescue cases.

presented by this case has not been answered by the Texas Courts.

I believe that sound policy considerations support the conclusion that the standard of the man of ordinary prudence should not be applied to bar recovery in a rescue situation. The very nature of the standard itself militates against its use against a rescuer.

Traditionally, the legal literature discussing the man of ordinary prudence emphasizes his many commendable qualities.[5] Nevertheless, this lifeless creature falls somewhat short of being an ideal person. He is subject to those human frailties which, while not commendable are not considered sufficient cause for judicial condemnation. His concern for the safety of trespassers is almost minimal. He shows but little more interest in the welfare of his social guests. Although he arranges the display of his goods and merchandise in a manner which he hopes will induce his business guest not to walk through the shop with eyes riveted on the floor, when the customer slips and falls the man of ordinary prudence will whisper into a receptive judicial ear that the dangerous condition of the floor was so open and obvious that any fool could plainly see it. The common law, recognizing his detachment and reluctance to involve himself in matters which do not affect him, does not expect him to come to the aid of his injured neighbor, even when he can do so without exposing himself to danger. Of course, these attributes of the man of ordinary prudence are seldom listed as character defects. In those situations where his conduct is not quite praiseworthy, the judi-

cial mind comes to his defense with the rhetoric of the "no duty" doctrine.

But no amount of verbal camouflage can hide the fact that our man of ordinary prudence will bestir himself only when inaction will be penalized. Since our standard of conduct is not too high, it is not unreasonable to penalize those who fall short of the standard. Our tolerance of conduct which does no more than conform to this minimum standard is but a recognition of human frailty. But to treat as a transgressor the person who, on occasion, rises above this standard is indefensible.

Heroism is not one of the attributes of the man of ordinary prudence, since prudence, his cardinal virtue dictates that he not embark on a journey down the road to heroism. This is as it should be. To adopt the hero as our standard would make tortfeasors of us all. The hero necessarily displays more concern for the safety of others and, correspondingly, attaches less value to his own safety, than does the man of ordinary prudence. Society places the hero on a pedestal. It is incongruous for the law, which should, at least to some degree, reflect the social conscience, to cast him into exterior darkness. To inquire whether one who risks his life to save another acted as would a person whose prudent nature would frown on such unselfish conduct is to ask a meaningless question.

The pronouncements of the legislative and judicial branches of this State clearly indicate a preference for a policy which demands that, when the purpose of conduct is

5. "He is one who invariably looks where he is going, and is careful to examine the immediate foreground before he executes a leap or a bound; who neither star-gazes nor is lost in meditation when approaching trapdoors or the margin of a dock; * * * who never mounts a moving omnibus and does not alight from any car while the train is in motion * * * and will inform himself of the history and habits of a dog before administering a caress; * * * who never drives his ball until those in front of him have definitely vacated the putting-green which is his own objective; who never from one year's end to another makes an excessive demand upon his wife, his neighbors, his servants, his ox, or his ass; * * * who never swears, gambles or loses his temper; who uses nothing except in moderation, and even while he flogs his child is meditating only on the golden mean. * * * In all that mass of authorities which bears upon this branch of the law there is no single mention of a reasonable woman." Herbert, Misleading Cases in the Common Law, 12–16 (1930), quoted in Prosser, Law of Torts, 3rd Ed., 154 n. 18 (1964).

the avoidance of death or serious bodily injury, the standard of the man of ordinary prudence be brushed aside. Thus, where plaintiff is rendering assistance to a person in distress, our legislature abrogated the common law rule which requires that the Good Samaritan, if he is to avoid civil liability to the person whom he attempts to aid, exercise ordinary care. In this State, as in several others,[6] a person who undertakes to administer emergency aid in good faith is not liable for "acts performed during the emergency unless such acts are wilfully or wantonly negligent." Vernon's Ann.Civ.St. Art. 1a.

Again, the Supreme Court of Texas, in developing the doctrine of "imminent peril," has held that, even where the sole threat is to the life or limb of the actor, so that his conduct lacks that spirit of altruism which prompts the civilizing impulse to rescue others, the standard of the man of ordinary prudence is not applicable. In an imminent peril situation, whether plaintiff acts prudently or imprudently in his attempt to save himself is irrelevant. International & G. N. R. Co. v. Neff, 87 Tex. 303, 28 S.W. 283 (1894); Texas & P. Ry. Co. v. Watkins, 88 Tex. 20, 29 S.W. 232 (1895); Jackson v. Galveston, H. & S. A. Ry. Co., 90 Tex. 372, 38 S.W. 745 (1897); Missouri, K. & T. Ry. Co. of Texas v. Rogers, 91 Tex. 52, 40 S.W. 956 (1897); Beck v. Browning, 129 Tex. 7, 101 S.W.2d 545 (1937); Thode, Imminent Peril and Emergency in Texas, 40 Tex.L. Rev. 441 (1962).

To hold that only reckless or rash conduct will preclude recovery by a rescuer from the person whose negligence created a dangerous situation should not shock the judicial conscience. While a rescue attempt has as its purpose the shielding of another from injury, it should be remembered that the rescuer, if successful, will also have effectively shielded the negligent defendant from liability or, as in Hoyle, will have decreased defendant's liability by reducing the number of persons killed or injured.